## KOEHLER ET AL. *v.* KOEHLER ET AL.

[No. 9,480.    Filed January 10, 1919.    Rehearing denied May 28, 1919.    Transfer denied May 13, 1921.]

1. TRUST.—*Resulting Trust.—Purchase of Real Estate.—Purchase Money Furnished to Grantee by Another.*—It is the general rule in equity that where one person buys real estate and takes the title in his own name, and the entire purchase money is furnished as purchase money by another, a resulting trust arises by implication of law in favor of the party paying the purchase money.   p. 521.

2. TRUSTS.—*Resulting Trust in Realty.—Purchase Money Contributed by Several Persons.—Title Taken in Name of One.*—Where the money with which real estate is purchased is contributed as purchase money by two or more persons and the title is taken in the name of one, a resulting trust in the land arises by implication of law in favor of each contributor to the extent of the purchase money paid by each.   p. 522.

3. TRUSTS.—*Resulting Trust in Realty.—Purchase of Realty with Money Furnished Grantee by Another.—Presumption.*—It is the general rule, subject to certain exceptions, that the mere

fact that one buys land with money furnished by another raises the presumption that the land was purchased for the party furnishing the purchase price, but the presumption is one of fact and rebuttable. p. 522.

4. TRUST.—*Resulting Trust in Realty.—Contribution to Purchase Price.—Intent of Parties.*—Where one furnishes part of the purchase price of realty without being joined as grantee, the mere proportion which the amount furnished happens to sustain to the entire purchase price is never conclusive as to whether a trust results, the decision in each case depending on the real intent of the parties. p. 523.

5. TRUSTS.—*Express Trust.—Creation.—Statute.*—Under §4012 Burns 1914, §2969 R. S. 1881, relating to trusts concerning lands, only the person having dominion can create and impress upon real estate an express trust, and such a trust can be created only by a writing which conforms strictly to the provisions of such section. p. 525.

6. TRUSTS.—*Requisites.—Trust Fund.*—In order that there may be a trust of any kind, there must be a trust fund. p. 526.

7. TRUSTS.—*Express Trust.—Creation by Parol Agreement.—Merging of Family Earnings.*—Where children pursuant to an oral agreement turned over to the father their income to be used as a common fund to purchase real estate to be held in trust for such children, they thereby created a trust in personal property. p. 526.

8. TRUSTS.—*Resulting Trust.—Merging of Family Earnings.—Purchase of Land.*—Where children pursuant to a parol agreement contributed their earnings to a common fund to be used by the father to purchase land, which he agreed to hold in trust for the children, and the father purchased lands with such fund, the title to which was taken in his own name, a trust in such real estate arose by implication of law in favor of the children. p. 527.

9. TRUSTS.—*Resulting Trusts.—Purchase of Land.—Presumptions.—Statute.*—Section 4017 Burns 1914, §2974 R. S. 1881, providing that when a conveyance is made to one person, and the consideration paid by another, no use or trust shall result in favor of the latter, but the title shall rest in the former, extinguishes the old presumption that he who furnished the money intended to acquire the title for himself, and raises an opposite presumption. p. 527.

10. TRUSTS. — *Resulting Trust. — Presumption. — Purchase of Realty for Wife or Child.—Statutes.*—Section 4017 Burns 1914, §2974 R. S. 1881, providing that when a conveyance is made to one person, and the consideration paid by another, no use or trust shall result in favor of the latter, but the title shall

rest in the former, etc., does not affect the old presumption that where the consideration is furnished by one and the title to the realty purchased is taken in the name of his wife or child, the transaction is intended as a means of support or as an advancement.   p. 527.

11.   TRUSTS.—Resulting Trusts.—Presumptions.—Statute.—Under §4017 Burns 1914, §2974 R. S. 1881, providing that when a conveyance for a valuable consideration is made to one person, and the consideration therefor paid by another, no use or trust shall result in favor of the latter but the title shall rest in the former, etc., all presumptions are against one seeking to establish a resulting trust, and the burden is upon him to prove all the elements essential under the statute to the existence of the trust.   p. 527.

12.   TRUSTS. — Resulting Trusts. — Requisites. — Contribution to Consideration.—Agreement.—Statutes.—In order that a resulting trust may arise upon contribution to purchase money within §4019 Burns 1914, §2976 R. S. 1881, providing that §4017 Burns 1914, §2974 R. S. 1881, as to resulting trusts in realty, shall not apply where it shall be made to appear that by agreement, without any fraudulent intent, the party to whom a conveyance of realty was made, or in whom the title shall rest, was to hold the land or some interest therein in trust for the party giving the purchase money or some part thereof, it is essential that the parties must have made such an agreement as is specified in the statute before the title to the real estate was acquired, that the agreement must be based upon valuable consideration, be fair and be free from fraud, and that the proof be clear and unequivocal; but the agreement need not be in writing, and if in parol, is not objectionable on the ground that it is an attempt to create indirectly an express trust in land in violation of §4012 Burns 1914, §2969 R. S. 1881.   p. 528.

13.   TRUSTS.—Resulting Trusts.—Violation of Trust.—Conveyance of Land Held in Trust.—Where children, pursuant to a mutual agreement, contributed their earnings to a common fund to be used by the father in buying land to be held in trust for the children, and the father from time to time purchased land with such fund, conveyances by him of land so acquired were in violation of the trust, and the deeds should be canceled.   p. 530.

14.   TRUSTS.—Resulting Trusts.—Merging of Family Earnings and Labor.—Trust Interests.—Determination.—Where children, pursuant to mutual agreement, contributed their earnings to a common fund, and also rendered services on a farm, the value of which was added to the fund, which was to be used by the father in purchasing real estate to be held in trust by him for the children, the labor as well as the money contributed

must be taken into account determining the contribution of each child.   p. 531.

15.   TRUSTS.—*Resulting Trust.—Purchase of Realty with Common Fund.—Interests of Contributors.*—Where real estate is purchased by a common fund, it is the common property of the contributors to the fund, and is owned by them in equal shares, notwithstanding the unequality of their contributions to such fund.   p. 532.

16.   TRUSTS.—*Resulting Trusts.—Merging of Family Earnings. —Purchase of Realty.—Parol Agreement as to Interests of Contributors.—Validity.*—Where children orally agreed to contribute their earnings to a common fund, which was to be used by the father in the purchase of land to be held in trust for the children, it was competent for the parties to specify in the agreement the respective interests the contributors should have in the land to be subsequently acquired.   p. 533.

17.   TRUSTS.—*Resulting Trust.—Evidence.—Sufficiency.*—Where children, pursuant to an oral agreement, contributed their earnings to a common fund which was to be used by the father in the purchase of real estate to be held in trust for the children, *held,* in an action to establish a trust in the land so purchased after the father had conveyed it in violation of the agreement, that. the evidence was sufficient to show conclusively all the elements essential to establish a resulting trust within §4019 Burns 1914,· §2976 R. S. ·1881.   p. 536.

18.   TRUSTS.—*Administration.—Powers and Duties of Trustee.*— Under the general obligation of carrying the trust into execution; a trustee is bound to conform strictly to the directors of the trust, and he can use the property only for the purposes contemplated in the trust.   p. 536.

19.   TRUSTS.—*Trust in Real Estate.·—Administration.—Conveyances.*—Where children agreed to contribute to a common fund which was to be used by the father in purchasing real estate to be held in trust for the children, the father violated the trust by purchasing land in his own name and in the name of himself and wife, it being his duty to take deeds embodying the provisions of the trust agreement as to the interest of the parties.   p. 537.

20.   TRUSTS.—*Resulting Trust.—Merger of Family Earnings.— Purchase of Realty.—Rights of Contributors to Fund.—Remedy at Law.—Adequacy.*—Where children, pursuant to an oral agreement, agreed to place their earnings in a common fund which was to be used by the father in purchasing property to be held in trust for the children, adequate compensation cannot be made to the children on the basis of the *quantum .*

*meruit*, after the purchase by the father from time to time of realty with the fund thus accumulated.   pp. 537, 539.

21.   TRUSTS.—*Constructive Trusts.*—*Statute of Frauds.*—Constructive trusts are raised by the courts, in proper cases, in defiance of the statute of frauds, on the principle that the statute cannot be invoked to aid in the perpetration of fraud, or to shield one who has perpetrated a fraud.   p. 539.

From Clark Circuit Court; *William Ridley*, Special Judge.

Action by Louis Koehler and another against Henry Koehler, Adolph Koehler and others.   From the judgment rendered, the defendants named appeal.   *Affirmed.*

*Evan B. Stotsenburg, John H. Weathers* and *Edward McCulloch,* for appellants.

*George C. Kopp* and *L. A. Douglass,* for appellees.

This action was instituted by appellees Louis Koehler and Christopher Koehler against appellants Henry Koehler and Adolph Koehler, and appellees Carrie Whitsett and Howard Whitsett, and one Catherine Koehler, now deceased.   Howard Whitsett is the husband of Carrie Whitsett, and was made a party in order that he might answer as to his interest, if any, in the subject-matter of the litigation by reason of his marital relation.   Catherine Koehler, who was the wife of Henry Koehler, died before the trial of the cause.   The action is to establish a trust in real estate and to cancel certain conveyances alleged to be in violation of the trust.   Finding and judgment for appellees Louis and Christopher.   The Whitsetts are made appellees solely because they did not desire to join in the appeal.

The following is the substance of so much of the special finding of facts as is material at this point:

"Louis Koehler, Christopher Koehler, Adolph Koehler and Carrie Whitsett are the four children of Henry Koehler and his wife Catherine Koehler.   At the time

of filing the complaint herein Christopher Koehler was about 46 years of age; Louis Koehler about 39 years of age, Adolph Koehler about 41 years of age, and Carrie Whitsett about 29 years of age. Henry Koehler and his said wife came from Germany to the United States between 30 and 35 years ago, and located near Sellersburg, Indiana, at which time the three boys were with them. The daughter Carrie was born a few years afterward. The parents were very poor, being without property of any kind whatsoever and had no means of support other than by their daily labor. None of the children was sent to school, except the daughter who attended a district school for a short time only. None of the three sons can either read or write.

"Prior to February, 1892, the family had accumulated some money from the joint earnings of the members thereof, and Henry and Adolph were about to use the money in the purchase of some real estate. In February, 1892, the father and his children entered into a parol contract by the terms of which the father agreed with the children that if they would work and turn over to him the income from any work or business in which they might engage, the money so earned and contributed by them should constitute a common fund; that he would use the fund to purchase real estate from time to time as the opportunity offered; that he would hold the real estate so purchased in the name of himself or of himself and wife, the mother of the children, in trust for all his said children; that he would not dispose of the real estate to be so purchased without the consent of the children; that he would hold all real estate which might thereafter be purchased with said fund for the benefit of said four children until the death of himself and wife, unless sold with the consent of the children; and that upon the death of both the father and the mother said four children should have the real estate

to themselves, share and share alike. Relying on said agreement, the children did contribute their labor and money to said common fund; and, together with the contributions of their father, a common fund of money was created and placed in the hands of the father for the purpose of purchasing real estate in the manner aforesaid.

"When Christopher was about 12 or 13 years of age he went to work at the Cement Mills near Sellersburg. For several years he earned about 75 cents a day, after which his wages were increased so that he earned from $1.50 to $1.75 per day. For 20 to 25 years he followed that work steadily. During all that time he lived at home and turned over to his father all his wages except 50 cents a week, under said agreement. Finally he married and left home.

"Louis Koehler lived at home until his marriage, which occurred about 11 years before the trial of this cause. Immediately after his marriage he went away and remained for about 6 months. Then he moved onto the farm, occupying a small house on a tract of 3 acres. He lived in this house without payment of rent for about 5 years. While growing up he worked on the land purchased by his father as hereinafter stated, and also worked at the Cement Mills. The money he earned was given to his father under said agreement. For 7½ years he and Adolph engaged in the business of buying and selling hay. He obtained $700.00 from his wife and invested it in the hay business. He and Adolph cut timber and sold it, from one tract of the land, to the amount of $900.00; and from another tract of the land, to the amount of $400.00. All profits from the hay business and all money received for timber so cut and sold was put into said fund. During the time Louis worked on the farm he received no wages. The profit of his labor went into said fund.

"Adolph Koehler remained at home and worked on the farm the greater part of his life, but worked at the Cement Mills occasionally. He received no wages for his work on the farm, but the profit derived therefrom and the wages he received for his work at the Cement Mills went into the fund aforesaid.

"That none of said sons paid board to their father. What clothes they wore the father purchased for them out of said fund. The family lived very economically and the father deprived his children of all the luxuries of life and subsisted them upon the barest necessities.

"Pursuant to said agreement and for the purpose of carrying out its terms and conditions, and for no other or different purpose or intention whatever, said Henry Koehler purchased at different times ten tracts of land, aggregating about 240 acres. The title to part of said real estate was taken in the name of Henry Koehler, and the title to part of it was taken in the name of himself and his wife Catherine Koehler. From time to time, at each time a tract of land was purchased, said agreement was renewed in substance and in fact; and the plaintiffs continued to work and earn money and transact business for the father and for themselves, and continued to put their earnings into the common fund in the hands of their father, and all purchases of land were made out of said common fund from time to time. The said agreement so made with said Henry Koehler, and all renewals thereof, were made without any fraudulent intent on the part of the parties thereto or any of them.

"On the 5th day of July, 1910, said Henry Koehler and his wife Catherine Koehler, without any consideration whatsoever, executed to appellant Adolph Koehler a deed of general warranty for certain tracts of said real estate, aggregating about 175 acres. On the same day said grantors executed to appellee Carrie Whitsett,

without any consideration whatsoever, their deed of general warranty for the remainder of said real estate, aggregating about 61 acres. This deed to Carrie was made without her knowledge or consent, and the deed to Adolph was made without any prior arrangement of any kind concerning any consideration therefor.

"Henry Koehler and his said wife had possession of all the said real estate, and received and retained all the rents and profits derived therefrom, up to the death of Catherine, which occurred in August, 1912. Since the death of his wife, Henry Koehler has received and retained all the rents and profits from said lands; and he still remains in possession thereof and receives and enjoys all the rents and profits therefrom.

"Carrie Whitsett withdrew her appearance in this cause, refused to make any defense, and as a witness under oath admitted that the allegations in the complaint were true. Henry Koehler was personally in court during the entire trial. He heard all the witnesses testify, but he did not testify or make any denial of their statements or of any of the allegations of the complaint.

"The two separate conveyances of said real estate made to Adolph Koehler and Carrie Whitsett, respectively, were made by Henry Koehler with the fraudulent purpose, intent and design to avoid the effect and operation of said agreement and of the trust in the said real estate resulting from said agreement and the creation of said common fund of money; and with the fraudulent purpose, intent and design to deprive the plaintiffs of their share of said real estate; and was accepted by Adolph Koehler with full knowledge on his part of said fraudulent purpose, intent, and design, except as to the four acres described in item 40 of the finding; and he now claims to own that portion of said real estate so conveyed to him in fee simple. Carrie

Whitsett makes no claim of ownership of the real estate so deeded to her, and she admits the existence of said trust."

On the facts found the court stated the following conclusions of law:

"(1) That the law is with the plaintiffs. (2) That the agreement between Henry Koehler and his children is favored by the law as being in the interest of the family and the public. (3) That the common fund of money created by them pursuant to said agreement constituted a trust fund and the real estate purchased with said fund became trust property to be held in accordance with said agreement, viz. by Henry Koehler and his wife during life and at their deaths to go to their four children equally (4) That whatever interest Catherine Koehler had in said real estate passed, at her death, to her husband by virtue of his marital rights. (5) That the plaintiffs are entitled to have the trust declared in said real estate, and that the respective shares of the parties therein should not be apportioned in accordance with the several amounts paid by each into the common trust fund, but should be apportioned in accordance with the terms of their agreement, to wit: one-fourth to each child, and all subject to the life estate of Henry Koehler. (6) That the trust created by the purchase of the real estate with the trust fund, pursuant to said agreement, is a resulting trust of the kind provable by parol testimony. (7) That the deeds to Adolph Koehler and Carrie Whitsett, being fraudulent as against said trust, are void and should be so declared and set aside. (8) That the defendants should be enjoined from conveying or incumbering said real estate. (9) That decree and judgment should be entered declaring a trust in said real estate in favor of the plaintiffs. (10) That the deed to Adolph Koehler ought to be set aside, except as to the four acres included

therein and described in item No. 40 of the finding. (11) That the deed to Carrie Whitsett ought to be set aside.    (12) That on his cross-complaint Adolph Koehler is entitled to have his title quieted to the four acres described in item No. 40 of the finding."

Judgment was rendered canceling the deed to Adolph, except as to the four acres; quieting Adolph's title to the four acres; canceling the deed to Carrie; and also decreeing:    "That said real estate is held in trust by said Henry Koehler as trustee for the plaintiffs Louis Koehler and Christopher Koehler, and the defendants Adolph Koehler and Carrie Whitsett; the same to be held in trust by said Henry Koehler for the term of his natural life and at his death to go to said Louis Koehler, Christopher Koehler, Adolph Koehler and Carrie Whitsett, equally, in fee simple."

The assignment of errors challenges (1) The sufficiency of the complaint; (2) the admissability of parol evidence to establish the alleged trust; (3) the sufficiency of the evidence to sustain the finding; and (4) the correctness of each conclusion of law.

DAUSMAN, C. J.—The theory of the complaint is that the parents and their children entered into an oral agreement to the effect that they would create a fund which should be invested from time to time in real estate; that the title to the real estate when purchased with this fund should be taken in the name of the father; that the parents should have a life estate therein, and the children should have the fee in remainder as tenants in common by equal shares; that said agreement was renewed from time to time; that pursuant to said agreement a trust fund was created and invested by the father in real estate, the title to which is taken partly in his name and partly in the names of himself and wife; that there was no fraudulent intent in the

making of said agreement or in the renewals thereof; and that by reason of the premises a trust in said real estate arose by implication of law in favor of the plaintiffs.

Appellants' contention is that plaintiffs are attempting to enforce a parol express trust in real estate. In support of this contention appellants insist that by making an oral agreement which provided that the father should take the title to the real estate in his own name or in the names of himself and wife, and specified what share each should have in the real estate to be acquired, the parties thereby excluded the possibility of any trust arising by implication of law; that their conduct amounts to nothing other than an attempt to create by parol an express trust in real estate; and that their said attempt failed and came to naught because of the provisions of the act of May 6, 1853, commonly known as the statute of trusts and powers.

Because of the various contentions presented by counsel it becomes necessary to consider to some extent the subject of resulting trusts generally.

We will not undertake an extensive review of the English and American cases at hand on that subject, which cases cover a period of more than two centuries. It will be sufficient to state that it was long ago established as the general rule in equity that where one person buys real estate and takes the title in his own name, and the entire purchase money is furnished *as purchase money* by another, a resulting trust arises by implication of law in favor of him who pays the purchase money. In other words: where A takes title in himself to real estate which in fact he purchased for B with B's money, in equity and conscience the real estate belongs to B notwithstanding A's so-called legal title; and in a court of equity, A's legal title must yield to B's superior equitable title.

*Crop* v. *Norton* (1740), 9 Mod. 233. Also the further general rule is established in equity that where

2. the money with which real estate is purchased is contributed *as purchase money* by two or more persons, and the title taken in the name of one, a resulting trust in the land arises by implication of law in favor of each contributor to the extent of the purchase money paid by each. *Wray* v. *Steele* (1814), 2 Vesey & Beames 388; *Crop* v. *Norton, supra; Powell* v. *M. & B. Mfg. Co.* (1824), 3 Mason 347, Fed. Cas. No. 11356; *Boyd* v. *M'Lean* (1815), 1 Johns. Chan. (N. Y.) 582; *Botsford* v. *Burr* (1817), 2 Johns. Chan. (N. Y.) 405; *Sayer* v. *Townsends* (1836), 15 Wend. (N. Y.) 647; *Perry* v. *McHenry* (1851), 13 Ill. 227; *Baker* v. *Vining* (1849), 30 Maine 121, 50 Am. Dec. 617; *Cutler* v. *Tuttle* (1868), 19 N. J. Eq. 549; 2 Story, Equity (13th ed.) §1195.

The general rule is that the mere fact that one buys land with money furnished by another raises the presumption that the land was purchased for him

3. who furnished the money. This presumption is founded on human nature and experience; for it is regarded that he would not have furnished the money unless he were to receive the benefits of the purchase. Tiffany, Real Property 229, and cases there cited. But the presumption is one of fact and is rebuttable. It may be overthrown, and the presumptive trust defeated by proof that the money was furnished on a different basis, as by way of a loan or otherwise, and not for the purpose of acquiring the land or any interest therein. Tiffany, Real Property 230; Perry, Trusts (6th ed.) §§139, 140.

There are exceptions to the general rule last stated. For example, where the money is furnished by a husband to his wife or by a father to his child, the presumption arises that it was furnished as a provision

for her support or as an advancement.   But this pre-
sumption may be rebutted by proof of the real intention
of the parties. *Smithsonian Institution* v. *Meech* (1898),
169 U. S. 398, 409, 18 Sup. Ct. 396, 400; 42 L. Ed. 793.

Some of the cases contain the statement that no re-
sulting trust will arise unless the contribution consti-
tutes an aliquot part of the entire purchase

4.   price.   *Wray* v. *Steele, supra; Botsford* v. *Burr,
supra; Perry* v. *McHenry, supra; Baker* v. *Vin-
ing, supra.*   But the true meaning of that statement, as
a patient consideration of the cases will disclose, is sim-
ply this:   Where the amount furnished constitutes an
aliquot part of the entire purchase price, as one-half,
one-third, or one-fourth, that fact alone raises the pre-
sumption that the money was contributed as payment
for a corresponding interest in the land; but where the
amount furnished is not an aliquot part of the entire
purchase price, especially where it constitutes but a
small portion thereof, that fact alone does not raise such
presumption, but is regarded rather as a circumstance
indicating that the money was furnished by way of a
loan, thereby creating merely the relation of debtor and
creditor, and that it was not paid for any interest in
the land.   But in no event is the mere proportion which
the amount furnished happens to sustain to the entire
purchase price conclusive in determining whether a
trust results; for, as in most other controversies, the
decision in each case must depend upon the real intent
of the parties.   *Bayles* v. *Baxter* (1863), 22 Cal. 575;
*Walsh* v. *McBride* (1890), 72 Md. 45, 19 Atl. 4; *Acker*
v. *Priest* (1894), 92 Iowa 610, 61 N. W. 235; *Strimpfler*
v. *Roberts* (1852), 18 Pa. St. 283, 57 Am. Dec. 606;
*Smith* v. *Strahan* (1856), 16 Tex. 314, 67 Am. Dec. 622;
*Sanders* v. *Steele* (1899), 124 Ala. 415, 26 South. 882;
*Skehill* v. *Abbott* (1903), 184 Mass. 145, 68 N. E. 37;
*Briscoe* v. *Price* (1916), 275 Ill. 63, 113 N. E. 881.

How is the intention of the parties to be determined if not from their conduct—from what they did and said? If they made an agreement, is not the agreement the best evidence of their intention?

As evidenced by the decisions, this question leads to one of the most curious and bewildering subjects in the whole realm of jurisprudence. Some of the decisions indicate that, in order that a resulting trust may arise in favor of one who furnishes money to another with which to purchase real estate, the transaction must have been conducted in silence, as if the parties were deaf and dumb; for any spoken words would create a conflict with the statute of frauds, and thereby defeat the trust that otherwise would have arisen. Some cases hold that, where the parties make an oral agreement which coincides exactly with the rights which equity would have conferred upon them had the oral agreement not been made, the agreement is nevertheless utterly void; but the mere fact that the parties foolishly made an agreement, which is a void nothingness and has no more effect than if it had never been made, will not so offend equity as to cause her to deny relief. *Robinson* v. *Leflore* (1881), 59 Miss. 148; *Corr's Appeal* (1892), 62 Conn. 403, 26 Atl. 478; *Cotton* v. *Wood* (1868), 25 Iowa 43. Then we find in standard text books the following statements bearing on this point: A resulting trust arises out of the accompanying facts and circumstances —out of the conduct of the parties. 1 Pomeroy's Eq. Jurisp. (2d ed.) §152 *et seq.* The trust results from the acts of the parties accompanied by the agreement. 1 Perry, Trusts (6th ed.) §134.

We will now turn away from the old rules and consider our statute. We are bound to assume that in the enactment of this statute the legislature was prompted by a desire to promote the public welfare; and the suggestion comes spontaneously that the old English stat-

ute of frauds and the rules developed thereunder, were deemed inadequate and unsatisfactory because of the changed financial and industrial conditions, and the opportunities afforded in a new country for investments in real estate. *Noel* v. *Ewing* (1857), 9 Ind. 37, 45. At any rate, our statute made some important changes in the law of resulting trusts. In this connection we deem it important to emphasize the fact that in so far as any decision rendered in another jurisdiction depends on a statute, it is of no value to us, unless the statute to which it relates is identical with or substantially the same as ours.

Section 1 of said acts is in the following language: "No trust concerning lands, except such as may arise by implication of law, shall be created, unless in writing, signed by the party creating the same, or by his attorney thereto lawfully authorized in writing." §4012 Burns 1914, §2969 R. S. 1881.

It will be observed that this section refers to only one party. The words "signed by the party creating the same, or by his attorney," denote the owner of the real estate. No person other than the one having dominion can create and impress upon real estate an express trust. 2 Pomeroy's Eq. Jurisp. (2d ed.) §987 *et seq.* Trusts of this kind can be created only by a writing which conforms strictly to the provisions of said section. Such trusts are usually created by deed or will. 39 Cyc 24. Obviously the act was designed to operate as a statute of frauds; and the first section thereof, in the absence of fraud, forever puts at rest, as between grantor and grantee, all controversies concerning any pretended express trusts which rest only in parol. *Fouty* v. *Fouty* (1870), 34 Ind. 433; *Mescall* v. *Tully* (1883), 91 Ind. 96; *Pennington* v. *Flock* (1884), 93 Ind. 378; *Wright* v. *Moody* (1888), 116 Ind. 175, 18 N. E. 608; *Murray* v. *Murray* (1899), 153 Ind. 14, 53

N. E. 946; *McGuire* v. *Smith* (1913), 54 Ind. App. 509, 103 N. E. 71. See also *Bayles* v. *Baxter supra.*

It is clear that the facts of the case at bar do not bring it within §1, *supra.* Appellees are not claiming that Henry Koehler created, or attempted to create, in their favor an express trust in the real estate after he acquired the legal title thereto. The complaint is not susceptible of that construction. On the contrary, it appears unmistakably from the averments of the complaint that the alleged trust which appellees are seeking to have declared is one which they claim has its origin in facts and circumstances which existed before Henry Koehler acquired title to the real estate, and with which facts and circumstances neither his immediate nor remote grantors had any connection or concern.

In order that there may be a trust of any kind, there must be a trust fund. In other words, the existence of a trust fund is essential to the existence of a

6. trust. When the Koehlers made their agreement, no trust fund existed and none was simultaneously created. But when the children

7. subsequently placed their money in the hands of the father on the faith of that agreement, undoubtedly a trust fund was thereby created. A trust then came into existence. But the trust was in personal property—in money. As yet there was no trust *in real estate.* At this point no one could say that for these people a trust in real estate would ever arise. They might voluntarily abandon their plan; death might render it impossible of performance; the father might violate the terms of the trust agreement by investing the fund in stocks and bonds; or by improvident management the fund might be irretrievably lost. Many things might happen to prevent the realization of a trust in real estate. But the agreement was performed;

the fund was invested in real estate; and simultaneously with the execution of the deeds to the father a trust in the real estate arose by implication of law in favor of the beneficiaries of the fund so invested. Thereafter the real estate constituted the trust fund. The trust in the real estate resulted from the entire chain of events which led up to the acquisition of the real estate. Indeed, trusts of this kind are called *resulting* trusts for no other reason than that they *result* from the antecedent process of events. The facts of the case at bar exclude the idea of an express trust in real estate.

Section 6 provides: "When a conveyance for a valuable consideration is made to one person, and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections." §4017 Burns 1914, §2974 R. S. 1881.

The effect of this section is to limit the old rule in equity concerning resulting trusts where the title to land is taken in the name of one person and the purchase price is paid by another. See 2 Pomeroy's Eq. Jurisp. (2d ed.) §1042. But the statute does not undertake entirely to abolish resulting trusts in such cases. On the contrary, as we shall see, it expressly provides for them under special conditions. But it completely inhibits or extinguishes the old presumption that he who furnished the money intended to acquire the title for himself, and in its stead raises the very opposite presumption. It is well to observe that where the consideration is furnished by one and the title is taken in the name of his wife or child, the old presumption that the transaction is intended as a means of support or as an advancement, is in harmony with this section and still prevails. *Baker* v. *Leathers* (1852), 3 Ind. 558;

*Meredith* v. *Meredith* (1898), 150 Ind. 299, 50 N. E. 29; *Lewis* v. *Stanley* (1897), 148 Ind. 351, 45 N. E. 693, 47 N. E. 677; *Lochenour* v. *Lochenour* (1878), 61 Ind. 595; *Graves* v. *Garard* (1909), 44 Ind. App. 712, 90 N. E. 22. Indeed, all presumptions are against him who seeks to establish a resulting trust, and the burden is upon him to prove all the elements essential under the statute to the existence of the trust.

Section 7 provides: "Every such conveyance shall be presumed fraudulent as against the creditors of the person paying the consideration therefor. * * *" §4018 Burns 1914, §2975 R. S. 1881. This section requires no comment.

Section 8 provides: "The provisions of the section next before the last (Sec. 6) shall not extend to cases (1) where the alienee shall have taken an absolute conveyance in his own name without the consent of the person with whose money the consideration was paid; or (2) where such alienee, in violation of some trust, shall have purchased the land with moneys not his own; or (3) where it shall be made to appear that, by agreement and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase-money or some part thereof." §4019 Burns 1914, §2976 R. S. 1881.

In order that a trust may arise within clause 3 the following elements are essential: (1) The parties must have made an agreement of the kind indicated therein. The agreement is absolutely required by the plain words of the statute. *Glidewell* v. *Spaugh* (1866), 26 Ind. 319; *Acker* v. *Priest* (1894), 92 Iowa 610, 616, 61 N. W. 235. (2) The agreement must have been made before the title to the real estate was acquired. *Westerfield* v. *Kimmer*

(1882), 82 Ind. 365; *Boyer* v. *Libey* (1882), 88 Ind. 235.   (3) There must have been a valuable consideration for the agreement.   But the consideration need not consist of actual money.   *White* v. *Sheldon* (1868), 4 Nev. 280.   (4) The transaction must be free from fraud.   (5) The proof must be clear and unequivocal. *Blair* v. *Bass* (1838), 4 Blackf. 539; *Baker* v. *Leathers, supra; Fausler* v. *Jones* (1855), 7 Ind. 277; *Turner* v. *First National Bank* (1881), 78 Ind. 19; *Westerfield* v. *Kimmer, supra.*   But the agreement need not be in writing, and is not objectionable on the ground that it is an attempt indirectly to create an express trust in violation of §1 of the statute.   *McDonald* v. *McDonald* (1865), 24 Ind. 68; *Radcliff* v. *Radford* (1884), 96 Ind. 482; 2 Pomeroy's Eq. Jurisp. (2d ed.) §1040; 1 Perry, Trusts (6th ed.) §137.   (6) The agreement must be fair; for a court of equity will not enforce an unconscionable agreement either through the doctrine of specific performance or through the doctrine of resulting trusts.

In *Boyer* v. *Libey, supra,* the court said, in substance, that where one person furnishes to another, money with which to buy land under an agreement that the latter shall take title in his own name and hold it for the benefit of the former, the elements of a resulting trust exist independent of the agreement.   This statement, as shown by the context of which it is a part, and by the cases therein cited, is infelicitous.   We have no doubt that the learned jurist who wrote that opinion meant to say that even if the agreement were eliminated, the remaining facts would give rise to a trust within either clause 1 or 2.   In that sense the statement is not incorrect.   But the principle, as more accurately and comprehensively stated in other cases, is that the whole transaction, including the agreement, gives rise

to what in equity constitutes a resulting trust. *Derry* v. *Derry* (1884), 98 Ind. 319; *Marcilliat* v. *Marcilliat* (1890), 125 Ind. 472, 25 N. E. 597; *Prow* v. *Prow* (1893), 133 Ind. 340, 32 N. E. 1121; *Noe* v. *Roll* (1893), 134 Ind. 115, 33 N. E. 905; *Peterson* v. *Boswell* (1894), 137 Ind. 211, 36 N. E. 845; *Toney* v. *Wendling* (1894), 138 Ind. 228, 37 N. E. 598; *Aylesworth* v. *Aylesworth* (1915), 184 Ind. 80, 109 N. E. 750; *Thornburg, Admr.,* v. *Buck* (1895), 13 Ind. App. 446, 41 N. E. 85.

The facts to which the statute must now be applied are unusual. The land was not purchased at one time and in one tract. It was acquired in several 13. tracts by successive purchases. When each tract was about to be acquired the family agreement was renewed. The affair was a continuing one, and extended through a period of years. Those years, especially for the sons, were years of toil and drudgery, of self-denial and sacrifice, during which their condition was akin to slavery. By the terms of the agreement the father assumed a position of trust and confidence. Relying on the agreement, and reposing faith in the father's promise, the children placed in his hands as trustee the proceeds of their labor. But the circumstances under which the agreement was performed make it impossible to determine with any degree of accuracy the amount of each one's contribution to the fund. No systematic and exact bookkeeping was contemplated or attempted, and in the nature of things would have been impracticable and probably impossible. Because of the nature of the plan adopted and executed, their several contributions cannot be expressed wholly in pecuniary terms, and are inseparably commingled. Any attempt to ascertain their respective interests by an accounting would be futile. But the courts are not so impotent as not to be able to secure to each that share in the estate

for which he planned and toiled and saved. We have no difficulty in reaching the conclusion that as each tract of land was acquired a trust arose therein by implication of law in favor of each party to the agreement; that the execution of the deeds by Henry Koehler to Adolph and Carrie was in violation of the trust; and that both deeds should be canceled.

Now, what is each individual's interest in the real estate? Appellants contend that each individual's interest, if any, must be in the exact proportion that his contribution to the purchase money bears to the entire purchase price. The finding discloses the amount of money contributed by each son to the purchase price of the several tracts, and the aggregate sum thus contributed by the sons bears a large proportion to the total amount paid for the lands; but the finding does not disclose the value of the labor contributed by each son. That their labor, as well as their money, must be taken into account, there can be no doubt. In *White* v. *Sheldon, supra,* the court said:

"Counsel attempt to make a distinction between the payment of money in cases of this kind and the rendering of services, but we apprehend the distinction is one not recognized in the books nor maintainable on principle. Equity looks to the consideration, and creates a trust in favor of him who furnishes it, regardless of whether such consideration be money or labor, or property given in exchange. Implied trusts are based upon the broad principle that he who furnishes the consideration is entitled to the property, and equity does not permit any unsubstantial distinctions to defeat the operation of its liberal and rational rules. We know of no principle of ethics or equity which would justify the creation of a trust in favor of him who furnishes money wherewith to purchase property, that

would not also create it in favor of him who renders services or labor for the same purpose."

The court made no finding concerning the daughter Carrie's contribution to the fund; but the evidence discloses that she shared in the labor and sacrifice by which said fund was created, and that she actually contributed some money thereto. Nor did the court find what, if anything, was contributed to the fund by the parents or either of them. But it appears from the evidence that the parents were hard-working people; that most of the planning, managing, and directing of the family affairs was done by them; that the father conducted the negotiations for the several tracts of land; and that the success of the family undertaking, from a strictly pecuniary standpoint, is largely due to the almost absolute control he exercised over his children.

Nevertheless, when all has been considered, it is apparent that the several contributions of the parties are unequal.

The trial court, in its finding, has characterized the fund as "a general fund" and also as "a common fund."

If regarded strictly as a common fund, having been created by the contributions of labor and money by the members of a family who had for the most part all things in common, it would follow naturally that the real estate purchased with that fund should be held to be the common property of the parties, and that they should own it by equal shares, notwithstanding the inequality of their contributions to the common fund. *Speer* v. *Burnes* (1896), 173 Pa. St. 77. But this alone does not justify the conclusion of the trial court that the father has only a life estate in the lands. To justify that conclusion, something more is required. The trial court was of the opinion that this justification exists in the agreement of the parties. As to this conclusion, should the trial court be sustained?

Where all the other conditions exist, which are essential under our statute, the Supreme Court has applied the general rule that payment of part of the purchase money will give rise to a resulting trust *pro tanta*. In other words, in such cases, in the absence of any data from which a different conclusion must be drawn, the naked fact of payment of part of the purchase money will give rise to a resulting trust to the extent of that payment. *Hughes* v. *White* (1889), 117 Ind. 470, 20 N. E. 157; *Derry* v. *Derry, supra.* This rule rests on the presumption that the parties mutually intended that each contributor should acquire the exact interest in the land for which his contribution would pay on a *pro rata* basis. But, as we have seen, the presumption is one of fact, and therefore rebuttable. The rule also involves the assumption that all contributions were made in actual money.

Now, the questions arise naturally, May the parties not make a valid parol agreement that their respective interests in the land to be acquired shall bear a different ratio to the entire tract than their several contributions bear to the entire purchase price? May they not thus agree that some one or more of them shall acquire an estate for life or for a term of years and that the others shall take the remainder in fee? Is their right to contract in this manner so limited that they must stipulate, if at all, for *pro rata* interests in the fee? We perceive no reason why such agreements should not be valid. The confusion on this point is due to the fact that in some instances there has been a failure to distinguish between an *express agreement* in cases of this kind and an *express trust.*

In *McGowan* v. *McGowan* (1859), 80 Mass. 119, 74 Am. Dec. 668, a case much discussed and often cited, the court said:

"There is no doubt of the correctness of the doctrine,

that where the purchase money is paid by one person, and the conveyance taken by another, there is a resulting trust created by implication of law in favor of the former. And where a part of the purchase money is paid by one, and the whole title is taken by the other, a resulting trust *pro tanto* may in like manner, under some circumstances, be created.

"But in the latter case we believe it to be well settled that the part of the purchase money paid by him in whose favor the resulting trust is sought to be enforced, must be shown to have been paid for some specific part, or distinct interest in the estate; for 'some aliquot part,' as it is sometimes expressed; that is, for a specific share, as a tenancy in common or joint tenancy of one-half, one-quarter, or other particular fraction of the whole; or for a particular interest, as a life estate, or tenancy for years, or remainder in the whole; * * *."

Here we have a plain recognition of the right of the parties to agree what shall be their respective interests in the subsequently acquired lands.

In *Skehill* v. *Abbott, supra,* it is held in explicit language that the parties have the right to stipulate what shall be the interest of each in the land, and that their stipulation is valid.

Now, it must be appreciated that we are dealing with a statute which in effect declares that there shall be no resulting trusts except in the three kinds of cases specified in §8, *supra,* thereof. The third class includes those cases: "Where it shall be made to appear that by agreement and without any fraudulent intent, the party to whom the conveyance was made or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof."

This provision of the statute is an express legislative recognition of the right of the parties to stipulate generally concerning the entire subject-matter involved. No limitation has been placed on that right by the legislature, except that such agreements shall be free from fraud. No good reason exists why the parties should not agree on what shall be the interest of each in the lands to be purchased with a fund to which each has contributed. In the case at bar the transaction does not rest exclusively on a money basis. We have seen that it is not essential that the consideration be in the form of actual money. It may consist of services, labor, or property of any kind—whatever is valuable and acceptable to the parties. Where the parties agree to accept a contribution in some form other than money, surely they should not be prohibited from agreeing on the valuation at which that contribution shall be accepted. The agreed valuation of that contribution necessarily fixes its relative purchasing power; and where they agree that a certain contribution shall entitle the contributor to a definite interest in the real estate to be purchased with the combined contributions of all, such agreement necessarily fixes the valuation at which that contribution is accepted. For the purpose of inducing contributions to the preliminary fund the parties may agree what shall be each one's interest in the common enterprise; and when the project has been consummated by converting the preliminary fund into real estate, the several interests of the contributors are fixed by their antecedent agreement. *White* v. *Sheldon, supra.* As said by the United States Supreme Court: "The existence of an express agreement does not destroy the resulting trust. It was not an agreement made by one owning and having the legal title to real estate, by which an express trust was attempted to be created,

but it was an agreement prior to the vesting of title— an agreement which became a part of and controlled the conveyance." *Smithsonian Institution* v. *Meech, supra.*

Under the circumstances it was competent for the parties to agree that each child should share equally in the benefits of the family enterprise, notwithstanding the inequality of their respective contributions. Likewise it was competent for the parties to fix by their mutual agreement, the exact interest of the parents in the family undertaking, regardless of the amount contributed by the parents thereto. The consideration for that agreement does not rest wholly on a pecuniary basis. Blood relationship, family ties, love and affection, and the welfare of the family group, are involved, and these constitute the highest consideration. Family agreements of this nature are favored by the law. *Harvey* v. *Hand* (1911), 48 Ind. App. 392, 95 N. E. 1020. The proof of the agreement, and of all the other elements essential to support a resulting trust within clause 3 of §8, *supra*, of the statute, is conclusive, and the trial court did not err in holding that the respective interests of the parties in the real estate are fixed by the agreement.

By the terms of the agreement the father was made general manager and treasurer, and as custodian of the fund he was in a special sense trustee, for the entire group. He took upon himself a special duty toward the others. Under the agreement it was his duty to carry the trust into execution.

"Under the general obligation of carrying the trust into execution, trustees and all fiduciary persons are bound, in the first place, to conform strictly to the directions of the trust. This is in fact the corner-stone upon which all other duties rest, the source from which all other duties take their origin. The trust itself, whatever it be, constitutes the charter of the trustee's

powers and duties; from it he derives the rule of his conduct; it prescribes the extent and limits of his authority; it furnishes the measure of his obligations. * * * A trustee can use the property only for the purposes contemplated in the trust, and must conform to the provisions of the trust in their true spirit, intent, and meaning, and not merely in their letter." 2 Pomeroy's Eq. Jurisp. (2d ed.) §1062.

The agreement itself, the continuous recognition of it, the long acquiescence therein and consent thereto, establishes the intent and purpose of the parties beyond a doubt. It is clear that the real intent of the parties was that the parents should have only a life estate in the land with remainder in fee to the children as tenants in common, and it was the father's duty to have taken conveyances which embodied this feature. By taking a conveyance to himself alone, thereby assuming a position antagonistic to the rights of the children and thereby acquiring the power to defraud them, he violated the trust reposed in him. It was the duty of the father to follow the "true spirit, intent and meaning" of that agreement. Good faith and conscience required that he should have taken deeds conveying to himself, or to himself and wife jointly, an estate in the lands during the life of himself and his wife, or during the life of either, with the fee in remainder to the children as tenants in common. The father never owned more than a life estate in the lands, and the decree of the trial court gives to him his own, and gives to each child his own.

The contract made by the members of the Koehler family is of a kind which equity will not permit to fail. The parties to that contract did not intend that the relation of master and servant, or of employer and employe, should exist between the father and the children. Through the years devoted to

the performance of the contract, the children were not working exclusively for the father. They were working on a special plan—each for all, and all for each. There was no intention that their time and labor should be measured by the standard of wages. By their toil the money with which to buy the land was mainly obtained. By their toil the land was improved and enhanced in value. It is only reasonable to suppose that but for the making of the family agreement, each son would have lived a different life, would have gone out into the world and toiled and planned in a different way, and would have enjoyed the life of a freeman. But by relying on the agreement, and devoting his years to the fulfillment of his part thereof, each son has irretrievably changed the whole course of his life and of his circumstances and opportunities. The proof is clear and unequivocal that the rendition of the services and the payment of the money by each son are referable wholly to the agreement, and that adequate compensation cannot be made on the basis of *quantum meruit.* A refusal to carry the agreement into full performance would enable appellants to perpetrate a gross injustice and an egregious fraud—and that, equity will not endure. *Watkins* v. *Jones* (1867), 28 Ind. 12; 2 Pomeroy's Eq. Jurisp. (2d ed.) §§155, 1044 *et seq.;* 36 Cyc 673 *et seq.; Rhodes* v. *Rhodes* (1846), 3 Sandf. Ch. (N. Y.) 305; *Sutton* v. *Hayden* (1876), 62 Mo. 101; *Sharkey* v. *McDermott* (1887), 91 Mo. 647, 4 S. W. 107, 60 Am. Rep. 270; *Van Dyne* v. *Vreeland* (1857), 11 N. J. Eq. 370, 12 N. J. Eq. 142; *Wright* v. *Wright* (1894), 99 Mich. 170, 58 N. W. 54, 23 L. R. A. 196; *Svanburg* v. *Fosseen* (1899), 75 Minn. 350, 78 N. W. 4, 43 L. R. A. 427, 74 Am. St. 490; *Kofka* v. *Rosicky* (1894), 41 Neb. 328, 59 N. W. 788, 25 L. R. A. 207, 43 Am. St. 685; *Cooper* v. *Colson* (1904), 66 N. J. Eq. 328, 58 Atl. 337, 105 Am. St. 660, 1 Ann. Cas. 997; *Gil-*

patrick v. *Glidden* (1888), 81 Me. 137, 16 Atl. 464, 2 L. R. A. 662, 10 Am. St. 245, and note; *Curdy* v. *Berton* (1889), 79 Cal. 420, 21 Pac. 858, 5 L. R. A. 189, 12 Am. St. 157, and note. In the case at bar the fraud is avoided by the enforcement of the agreement through the doctrine of constructive trusts, and the end of justice is efficiently accomplished by the decree of the trial court. Constructive trusts are raised up by the courts, in proper cases, in defiance of a statute of frauds, on the principle that a statute of frauds cannot be invoked to aid in the perpetration of fraud or to shield one who has perpetrated fraud. Pomeroy's Eq. Jurisp. (2d ed.) §§431, 921, 1293.

Finally, it must be borne in mind that it appears from appellants' brief and argument that they have not made the contention that the share of each in the land must be in exact proportion to the purchase money contributed, for the purpose of procuring a distribution to each according to his deserts measured by that standard. They have made that contention solely in the hope, that thereby the trust might be utterly defeated, and thus two of the sons wholly deprived of the fruits of their toil. It should be noted also that none of the sons have made any objection to the daughter sharing equally with them, although her contribution to the fund is least of all, and at no stage of this proceeding have appellants even suggested that she ought not to hold all the land fraudulently conveyed to her by the trustee.

All other questions presented are necessarily covered by the foregoing opinion, and by implication decided adversely to appellants.

It has been shown to this court that Henry Koehler has died since this cause was submitted; and therefore this decision is rendered as of the date of submission.

Judgment affirmed.