# CECILIA ADAMS *v.* JOHN MAHUKU ADAMS.

## NO. 2950.

Argued October 13, 1954.          Decided October 18, 1954.

Towse, C. J., Stainback, J., and Circuit Judge
McKinley in Place of Le Baron, J., Absent.

### OPINION OF THE COURT BY STAINBACK, J.

This is a bill in equity to declare a trust in favor of petitioner of a one-half interest in certain real property—their home—situate on Olokele street (and other property not now involved) in Honolulu standing in the name of respondent-appellant.

The chancellor granted the relief sought by impressing a trust in favor of petitioner as prayed and further ordered the partition of the property. This appeal is taken from the decree entered.

The petitioner and respondent were married on February 18, 1927, and were husband and wife at the time the bill was filed on April 8, 1952. On June 5, 1950, petitioner was awarded a decree of separation from bed and board; the wife continued to live in their home during the separation. On November 18, 1952, an absolute divorce was granted the petitioner.

Petitioner, eighteen years of age at the time of her marriage to Mr. Adams, had a limited education, fifth or sixth grade. Following their marriage the parties were in considerable financial difficulty. At first they lived with Mr. Adams' father, then in a residence provided by relatives rent free pending the expiration of a certain leasehold; at the expiration of the leasehold it became necessary for the Adams couple to look for a new place. Mrs. Adams testified she looked for a place for two or three weeks and finally in January 1934 she found the house involved in this appeal which was offered for sale by Lewers & Cooke, Limited, for $3,750. At that time the parties had three small children and Mr. Adams' salary was only $944 per year working part time for the Mutual Telephone Company. Mrs. Adams was taking in sewing and from her testimony was making about $12 per week. Mrs. Adams testified:

"A Well, a friend of ours saw that place. We didn't know whether it was for rent or for sale. So we found out it was for sale, so we bought it."

Mrs. Adams testified that she had a discussion with her husband as to raising the money and that they agreed with all he could make and what she could do with her sewing they could pay for the place. Nothing was said at the time of signing any papers and she did not know the nature of the contract or conveyance by Lewers & Cooke, Limited.

The chancellor found "that the petitioner contributed

to the purchase of the Olokele Street property in rather substantial amounts and that such contributions were earned by her as a result of her individual efforts in connection with her outside employment as well as from her sewing, all earned while she was carrying on the duties of a housewife and raising a family of three youngsters * * *." The chancellor stated: "The evidence further establishes that the petitioner contributed a substantial amount to the family 'pot' through her sewing, as well as by periodic employment outside of the home. The petitioner was employed at the Hawaiian Pineapple Company in the years 1938, 1939, 1940 and 1941. She earned a total amount of $1,403.23 in that employment. In addition, the petitioner was employed at the Paradise of the Pacific a substantial portion of the year 1942, and was employed at Waikiki Poi Bowl during portions of the years 1946 and 1947. All of this money was earned while the Olokele Street property was being purchased, payments being made on agreement of sale and later on the mortgage, and was put in a common 'pot' together with the respondent's wages."

The petitioner further testified that not only did her earnings go into the "family pot" used for the purchase of the property, but also she frequently paid from her earnings the expenses of the household, including clothing for the children.

The chancellor found that the petitioner's contributions were of substantial amounts earned by her through outside employment as well as sewing and that the contributions were made on the purchase price of the property based upon the belief that she was purchasing property for herself jointly with her husband.

Though no accurate account was kept of the amounts contributed by the wife (nor, for that matter, by the husband) it is clear that the understanding of both parties was that this was a joint arrangement whereby the pur-

chase price was to be paid out of the pooled earnings of both or a "common pot."

While appellant admits that where contributions are shown by a wife in the purchase of property there is no presumption of a gift, yet he contends that for a trust to result from such payments by one when title is taken in another there must be clear and convincing evidence of the amount contributed if the trust interest is to be created in the property.

While the general rule may well be as stated by counsel for appellant, the situation where family ties are concerned is quite different and more particularly so where the parties involved are husband and wife. (*Koehler* v. *Koehler,* 75 Ind. App. 510, 121 N. E. 450; *Fox* v. *Maurer et al.,* 178 Ore. 64, 164 P. [2d] 417; *Hughes* v. *Helzer,* 182 Ore. 205, 185 P. [2d] 537.)

The relation of husband and wife is a status calling for the utmost confidence of each in the other. Under such an arrangement there should be no need for keeping books of account or for a lawyer, or rather for two lawyers, in dealing with the other; they are not dealing at arm's length; the love, affection and welfare of the family are sufficient considerations to offset any inequality in the contributions where an arrangement is entered into for the purchase of a home jointly. That the evidence fails to indicate the specific part of the purchase price of the property which the wife may have made or the fractional interest which she should have is not fatal to the trust as the entire arrangement shows each expected equal shares in the property; in fact, it was doubtful if the wife, with her limited education and business experience, would know anything about the technicalities of joint deeds or conveyances as tenants in common, etc. She and her husband agreed to buy a "home" (not investment property) out of the "common pot"; she was led to believe it was their home

and it is immaterial that the husband may have paid the larger part or that the wife could not establish the definite amounts paid by her so as to receive that fractional interest.

It may be noted too that the husband made no claim to exclusive ownership until the marital difficulties arose and that when they mortgaged the property in question and purchased other property with the proceeds therefrom the deed was made to the husband and wife.

There is ample evidence to sustain the decision and decree of the chancellor.

Affirmed.

*W. W. Saunders* (*Lewis, Buck & Saunders* with him on the briefs) for respondent-appellant.

*S. Shapiro* (also on the brief) for petitioner-appellee.