**Buford WORKMAN, Plaintiff-Appellant,**

**v.**

**Betty DOUGLAS, Defendant-Appellee,**

**and**

**Steven R. Douglas, Third Party Defendant-Appellee.**

**No. 1–980A251.**

Court of Appeals of Indiana,
First District.

May 12, 1981.

Robert L. Dalmbert, Dalmbert & Marshall, Columbus, for plaintiff-appellant.

Richard S. Eynon, Columbus, for defendant-appellee.

NEAL, Presiding Judge.

This is an appeal by plaintiff-appellant Buford Workman (Workman) from a judgment in the Bartholomew Circuit Court in favor of a counterclaim filed by defendant-appellee Betty Douglas (Betty) on a theory of a resulting trust.

We reverse.

## STATEMENT OF THE FACTS

Steven and Betty Douglas were a young married couple desiring a better home. Being unable to finance a new home, they approached Buford Workman, a friend with whom Steve had lived as a child, to solicit his aid. Workman purchased a home from Mr. and Mrs. John Ritzenthaler for $15,000; and title was recorded in Workman's name on April 5, 1974. He made a $3,000 down payment and obtained a mortgage from a financial institution for $12,000 at 8.5 percent interest, payable over 25 years with monthly payments of $96.80. Without drawing a contract or any other writing, Steven and Betty moved into the home. Though Workman contended the transaction between himself and Steven and Betty was a rental, they testified it was their impression, based upon all the conversations, with Workman, they had contracted orally to buy the house for $96.80 per month for 25 years, at which time it would be legally theirs. Steven and Betty testified they understood the purchase price to be $15,000; however, the record is silent as to how they had decided to pay back Workman's $3,000 down payment, if at all. Calculation reveals that the payment of $96.80 per month for 25 years would retire only the $12,000 loan. No mention is made in the record of the payment of taxes, repair, insurance on the property or the rights of the parties in the event of a default. Steven and Betty never insured the house, but claimed they paid taxes on it for two years, and then, for obscure reasons, ceased. The evidence does not disclose Steven and Betty ever made a down payment on the home at or prior to the time Workman took title on April 5, 1974.

In 1979, Steven and Betty were divorced, and Betty received the property pursuant to the divorce decree. At this time they were in arrears on the $96.80 monthly payments in the approximate amount of $1,152. Workman filed suit for the rent arrearages, damages in the amount of $270, and possession of the real estate. Betty filed a counterclaim upon a theory of a resulting trust under Ind.Code 30–1–9–8 alleging there was an oral contract to purchase the home for $15,000, payment of $1,000 down, and $96.80 per month for 25 years with interest at 7¾ percent. In the prayer of her complaint, Betty asked the trial court to declare a resulting trust, constructive trust, or to issue an order estopping Workman from denying the contract.

Upon a trial before the court, special findings of facts and conclusions of law were entered in which the trial court found as follows: 1) that an oral contract of sale existed, 2) that Steven and Betty had paid valuable consideration, 3) that Workman had given a mortgage on the property for $12,000 to be paid in 25 years at $96.00 per month, and 4) that Steven and Betty, upon making those payments, were to receive the property. The trial court's findings Nos. 11, 12, and 13, its conclusions, and judgment are set out verbatim as follows:

"11. Burford V. Workman should be estopped from refuting the April, 1974 agreement he entered into with the Douglases, and a resultant trust should be found to have arisen in favor of Betty Douglas concerning her continued status as a purchaser of the subject real estate and the identification of Buford V. Workman as vendor of the same;

12. The parties should be ordered to enter into a written contract for the sale of the subject real estate by Workman to Betty Douglas, provided that Betty Douglas shall first pay to Buford V. Workman on or before the 2nd day of May, 1980, the sum of Fifteen Hundred Twenty nine Dollars Thirty Five cents ($1,529.35) and make a payment of Ninety-six Dollars ($96.00) on or before May 5, 1980, and if Betty Douglas shall fail to make such payments when the same are due, then Burford V. Workman should

have judgment for such sums and be entitled to immediate possession of the subject real estate;

13. The contract for the sale of the subject real estate should be prepared in a form similar to that published by the Indianapolis Bar Association or the Allen County, Indiana, Bar Association, and the contract should call for payment of real estate taxes by the vendor and insurance of the dwelling house by the purchaser in an amount of at least Eighty-five percent (85%) of the replacement costs of the subject dwelling house, and the terms of the sale should be set down as a balance owed of Ten Thousand Nine Hundred Seventy-one Dollars Forty-eight Cents ($10,971.48) to be paid in equal monthly installments of Ninety-six Dollars ($96.00) principal and interest included, at an annual percentage rate of eight-and-one-half percent (8½), such payments to continue over approximately Two Hundred Thirty-five (235) months, with the first such payments to be made on or before June 5, 1980.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

1. Buford V. Workman, plaintiff herein, shall have judgment against Betty Douglas, defendant herein, for the sum of Fifteen Hundred Twenty-nine Dollars and thirty-five Cents ($1,529.35) on the 2nd day of May, 1980, and for the sum of Ninety-six Dollars ($96.00) on the 5th day of May, 1980, and possession of the following described real estate more commonly known as 1904 Keller Avenue, Columbus, Indiana:

Lot Numbered One Hundred Twenty-two (122) in George W. Caldwell's Addition to the City of Columbus, Bartholomew County, State of Indiana.

2. However, if Betty Douglas shall pay such hereinabove described sums to Buford V. Workman on or before the respective dates the same are due, then she shall be entitled to remain in possession of the subject real estate and the parties shall enter into a written contract for the sale of the real estate by Buford V. Workman to Betty Douglas, which con-

tract shall be subject to approval by the Court and shall be in a form similar to that published by the Indianapolis Bar Associate [sic] or the Allen County Bar Association, and which contract shall provide for payment of real estate taxes by the vendor and insurance of the subject property in an amount equal to at least Eighty-five percent (85%) of its replacement cost value by the purchaser, and which purchase price shall be set down at Ten Thousand Nine Hundred Seventy-one Dollars Forty-eight Cents ($10,971.48) with payments thereon to be made in equal monthly installments of Ninety-six Dollars ($96.00), consisting of principal and interest, with interest at an annual rate of Eight-and-one-half percent (8½%), such payments to continue for approximately Two Hundred Thirty-five (235) months, or until the purchase price is paid."

## ISSUES

Workman presents four issues for review wherein he contends:

I. The trial court erred in finding that the parties entered into an oral contract and that the same was valid and that a resulting trust exists in favor of the appellee, Betty Douglas;

II. The trial court erred in ordering the parties to enter into a written contract embodying certain terms and conditions;

III. The trial court erred in permitting, over objection, oral testimony concerning the terms and conditions of a decree of dissolution and by indicating that it would take judicial notice of such decree; and

IV. The trial court erred in not finding any contract that may have been entered into in default.

## DISCUSSION AND DECISION

*Issue I. Existence of a resulting trust*

The sole issue raised by the parties is the theory of a resulting trust. The trial court, upon entering its own findings, concluded that a resulting trust had arisen in favor of Betty.

Our standard of review as stated by Ind. Rules of Procedure, Trial Rule 52(A) requires us to uphold the trial court's findings of fact or judgment unless "clearly erroneous." Furthermore, T.R. 52(A), in relevant part, states:

"*Upon its own motion*, or the written request of any party filed with the court prior to the admission of evidence, *the court* in all actions tried upon the facts without a jury ... *shall find the facts specially and state its conclusions thereon.*" (Emphasis added.)

This court, in *Blade Corp. v. American Drywall, Inc.*, (1980) Ind.App., 400 N.E.2d 1183, 1185, stated:

"It is well-established that this court will not reweigh conflicting evidence on appeal. We will consider only that evidence which tends to support the trial court's findings of fact, conclusions of law, and judgment, together with all reasonable inferences which may be drawn therefrom. If, from that perspective, there is sufficient evidence to support the trial court's judgment, we must affirm. *Shahan v. Brinegar*, (1979) Ind.App., 390 N.E.2d 1036. We are cognizant that the trial court's findings are not to be set aside on appeal unless clearly erroneous, Ind.Rules of Procedure, Trial Rule 52(A), and that a trial court's judgment will be determined to be clearly erroneous only after a review of the evidence leaves us with a definite and firm conviction that the trial court erred. *University Casework Systems, Inc. v. Bahre*, (1977) Ind. App., 362 N.E.2d 155.

Judge Garrard, in *In Re the Marriage of Miles*, (1977) 173 Ind.App. 5, 362 N.E.2d 171, rendered a thorough treatment on the matter and stated:

"*[T]he purpose of special findings is to provide the parties and reviewing courts with the theory on which the judge decided the case in order that the right of review for error may be effectively preserved. Miller v. Ortman* (1956), 235 Ind. 641, 136 N.E.2d 17. (*See, also,* the nu-

merous decisions dealing with the necessity of findings in judicial review of administrative proceedings.) Thus, whether the findings are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. In making this determination a reviewing court will accept the findings made by the trial court if they are supported by evidence of probative value. *Miller v. Ortman, supra; First Nat'l. Bank of Mishawaka v. Kamm* (1972), 152 Ind.App. 353, 238 N.E.2d 563. Furthermore, on appeal the findings will be construed together and will be liberally construed in support of the judgment. *Scott v. Kell* (1956), 127 Ind.App. 472, 134 N.E.2d 828, *trf. den.* 141 N.E.2d 406; TR 52(A).

Yet where, as here, the outcome is not mandated by an established rule of law, but, instead, the decision rests within the discretion of the court, *we must reverse if the decision is not consistent with the findings and conclusions or if the reasons given are insufficient as a matter of law to justify the manner in which the court exercised its discretion. The reason arises from the fact that the court does have discretion. If the reason given by the court is not a valid basis for a particular exercise of discretion, it can be no more than conjecture on our part that once the court recognizes the invalidity of its original reason it will reach precisely the same exercise of discretion for other reasons.* Our Supreme Court recently so held in *City of Elkhart v. Middleton* (1976), Ind., 356 N.E.2d 207. *Similarly, if the findings and conclusions entered by the court, when construed most favorably toward the judgment, are nevertheless clearly inconsistent with it, the decision must be set aside regardless of whether there was evidence adduced at trial which would have been sufficient to sustain the decision. To hold otherwise would negate the primary purpose of special findings."* (Emphasis added, footnote omitted.) 173 Ind.App. at 8–9, 362 N.E.2d 171.

In Indiana, resulting trusts are largely a creature of statute. Before a resulting trust can arise, Ind.Code 30–1–9–8 provides that either of the following three situations must exist:

"The provisions of the section next before the last, shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name, *without the consent of the person with whose money the consideration was paid* ; or where such alienee, in violation of some trust, shall have purchased the land with *moneys not his own* ; or where it shall be made to appear that, by agreement, and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein *in trust for* the party paying the purchase-money or some part thereof." (Emphasis added.)

It is noted that the statute, in each instance, presupposes the furnishing of money by one party and title vesting in another. In *Auten v. Sevier,* (1964) 136 Ind.App. 434, 202 N.E.2d 274, the court set forth the following requirements to establish a resulting trust:

1. An agreement between the parties conforming to requirements of the statute.

2. The agreement must have been made prior to the time the real estate was acquired.

3. There must have been valuable consideration.

4. The transaction must have been free from fraud.

5. The proof must be clear and unequivocal.

6. The agreement must be fair.

136 Ind.App. at 439, 202 N.E.2d 274.

■ A review of the authorities relating to the creation and enforcement of a resulting trust is necessary for our decision. The statutory requirements must be complied with for a resulting trust to exist. *Hadley v. Kays,* (1951) 121 Ind.App. 112, 98 N.E.2d 237. No particular form of words is required and such trust will not be permitted to fail because of a mere lack of form or method of proof, if the evidence clearly and

unequivocally establishes the essential elements for the creation of such resulting trust. *Hadley, supra.* The cases require strict proof that the claimed beneficiary has actually furnished the purchase price for the property. *Melloh v. Gladis,* (1974) 261 Ind. 647, 309 N.E.2d 433. *Hutton v. Cunningham,* (1901) 28 Ind.App. 295, 61 N.E. 1138. It must be shown that the land was purchased with the beneficiaries' money, and it is insufficient to prove the existence of a resulting trust that the title holder purchased the property with his own money. *Blair v. Bass,* (1838) 4 Blackf. 600. Where there is an oral agreement for one person to purchase a property with his own money and to resell it to another, who has agreed to purchase it for the amount invested, it is merely a parol contract for the sale of real estate and is within the statute of frauds. Such an arrangement does not amount to a resulting trust. *Boyer v. Leas,* (1945) 116 Ind.App. 502, 64 N.E.2d 38; *McClellan v. Beatty,* (1944) 115 Ind.App. 173, 55 N.Ed.2d 327. A resulting trust cannot be created by funds or after advances furnished subsequent to the time of purchase and conveyance. *Schwab v. Schwab,* (1959) 130 Ind.App. 108, 162 N.E.2d 329. Authority exists for the proposition that in order to raise a resulting trust *all* of the purchase money must have been paid by the claimed beneficiary. *Koehler v. Koehler,* (1919) 75 Ind.App. 510, 121 N.E. 450, 89 C.J.S. *Trusts* § 122 (1955). If only a part of the consideration has been paid by another, a trust in the latter's favor results *pro tanto, Koehler, supra,* but the exact portion should be clearly shown. *Kemp v. Elder,* (1930) 91 Ind.App. 65, 170 N.E. 90. The burden of proof to establish a resulting trust is upon the asserting party. *Koehler, supra.* He has the burden of proving both the existence of an agreement and that he furnished the consideration. *Schwab, supra.*

█ In the case at bar, a fatal flaw in the evidence prevents a resulting trust from arising. Steven and Betty did not advance any money to Workman for the purchase of the real estate. The only evidence on this necessary requirement was the testimony of Steven. He testified essentially that he had inherited $1,000 which was used to purchase a stove, refrigerator, and appliances. He did not know whether any part of the $1,000 was used as a down payment on the house. He concluded his testimony with the following statement:

> "O.K. there was $1,000 invested, out of my pocket, O.K. that either bought the appliances or there was $500 went for the down payment. Now like I say, I have no records to show 'em which way the money went, but I know it was invested."

That testimony viewed most favorably to Betty shows that Steven simply did not know whether he had placed some money toward the purchase of the property or all of it toward the purchase of appliances. The burden is upon the claimant beneficiary to prove this element. She has failed. The transaction, in light of the evidence and the cases, simply discloses an oral agreement wherein Workman would purchase the real estate with his own money, and resell it to Steven and Betty for the purchase price. Such an arrangement does not create a resulting trust.

█ We are further of the opinion that the oral contract sued upon by Betty is not sufficiently definite to be enforced. A contract to be specifically enforceable must be complete with respect to its essential elements. *Neel v. The Cass County Fair Association,* (1968) 143 Ind.App. 339, 240 N.E.2d 546. If any of these elements are omitted or left obscure and undefined, so as to leave the intention of the parties uncertain respecting any substantial terms of the contract, the case is not one for specific performance. *Foltz v. Evans,* (1943) 113 Ind.App. 596, 49 N.E.2d 358; *Ryan v. Summers,* (1924) 81 Ind.App. 225, 142 N.E. 879. But absolute certainty is not required so long as it does not affect the substantial rights of the parties. *Clark v. Richardson,* (1943) 222 Ind. 1, 51 N.E.2d 484. Here, the evidence most favorable to support an oral contract shows that Workman paid $15,000 for the real estate as follows: $3,000 down and the remaining $12,000 secured by a mortgage at 8.5 percent interest, payable in 25 years at $96.80 per month. Steven and Betty thought they would own the property

**1346**

by paying the $96.80 monthly payments for 25 years. However, the following matters were not mentioned or discussed: (1) who was to pay the taxes and insurance during the 25 years, (2) whether the $3,000 down payment was to be repaid to Workman, and if so, how, (3) rights of the parties in event of default, (4) repairs, and (5) interest. We are of the opinion that in a time payment contract those elements are essential and substantial. Accepting their version, Steven and Betty would receive the $15,000 home upon paying off the $12,000 mortgage, and, in the course of the 25 years, would not have to pay for taxes, insurance and repairs. Workman, as a reward for helping the young people buy a home, would have lost the $3,000 down payment in addition to the cost of taxes, insurance and repair for 25 years.

For these reasons we are of the opinion that the agreement was not sufficiently definite to enforce.

*Issue II. Ordering parties to enter into contract*

 Closely allied to the matter of a contract too indefinite to enforce is the issue of the court's ordering the parties to enter into a contract. Recognizing the inadequacies of the flimsy agreement before it, the trial court succumbed to the temptation to do for the parties what they should have done in the first place. The trial judge made them a new contract, similar in format to sale contracts recommended by the Indianapolis or Allen County Bar Association. The trial court stipulated terms never contemplated by the parties. Apparently, by omission, it relieved Steven from any further obligation under the original contract. It is a well established rule in Indiana that our courts can only enforce the terms of the contract as agreed upon and have no authority to make a new and different contract. *Brademas v. Real Estate Development Co.*, (1977) Ind.App., 370 N.E.2d 997; *Tastee-Freez Leasing Corp. v. Milwid*, (1977) Ind.App., 365 N.E.2d 1388; *The Prudential Insurance Company of America v. Lancaster et al.*, (1966) 139 Ind. App. 292, 219 N.E.2d 607; *Bell et al. v. New York Life Insurance Company*, (1963) 134 Ind.App. 614, 190 N.E.2d 432.

We are of the opinion that the trial court, regardless of its good intentions, overstepped its bounds by ordering the parties to enter into a new and different contract.

In disposing of Issues I and II, it is unnecessary to discuss Issues III and IV. We would note that only issues raised by the counterclaim are presently before us. However, the apparent judgment on the complaint is inextricably interwoven with the judgment on the counterclaim. We therefore are reversing the entire judgment and are ordering a new trial consistent with this opinion.

Judgment reversed.

ROBERTSON and RATLIFF, JJ., concur.