Robert C. RODENBECK, et al., Plaintiffs,

v.

MARATHON PETROLEUM COMPANY, Defendant and Counter–Claim Plaintiff,

v.

Robert C. RODENBECK, et al., Counter–Claim Defendants.

MARATHON PETROLEUM COMPANY, Third–Party Plaintiff,

v.

KINZIE SUPER SERVICE, INC., an Indiana Corporation, Third–Party Defendant.

Civ. No. F 88–307.

United States District Court, N.D. Indiana, Fort Wayne Division.

July 19, 1990.

See also 742 F.Supp. 1442.

**1450**

Max E. Hobbs, Fort Wayne, Ind., Jacqueline A. Simmons, L. Alan Whaley, Ice Miller Donadio & Ryan, Indianapolis, Ind., for plaintiffs.

Renee R. McDermott, Barnes & Thornburg, Indianapolis, Ind., Kim M. Spielman, Deborah Lawrence, Barnes & Thornburg, Fort Wayne, Ind., for Marathon Petroleum Co.

Daniel K. Leininger, Wesley N. Steury, Burt Blee Dixon & Sutton, Fort Wayne, Ind., for Zimmerman Excavating.

John H. Brandt, Fort Wayne, Ind., for Murray Equipment.

Kimberlie Antrim Forgey, Deputy Atty. Gen., Indianapolis, Ind., for State of Ind. Leaking Underground, etc.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on motion for summary judgment filed by defendant Marathon Petroleum Company (Marathon) on December 28, 1989. The parties have fully briefed the issues and oral argument was held on June 7, 1990. For the following reasons the motion for summary judgment will be granted.

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Tp. High School Dist. No. 204,* 802 F.2d 981, 986 (7th Cir.1986).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex,* 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 106 S.Ct. at 2511.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine.

Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S.Ct. at 2512.

### Discussion

Plaintiffs are the owners of real estate located at 901 Spring Street, Fort Wayne, Indiana. For many years this property had been the site of a gasoline service station known as Kinzie's Super Service and operated by Kinzie Super Service, Inc. (Kinzie). In 1987 plaintiffs decided they no longer wished to operate the service station. Thus, on December 31, 1987, plaintiffs Rodenbeck and Runkle cancelled their agreement for lease of real estate with defendant Marathon Petroleum Company (Marathon). On this same date, Kinzie cancelled its service station lease with Marathon. In 1988 plaintiffs had a valid Offer to Purchase secured by earnest money, which Offer to Purchase required that the ground test according to EPA standards. Borings were taken of the ground and test samples sent to a laboratory for analysis. The laboratory test showed a substantial amount of contamination of the soil and the prospective purchaser exercised his option to terminate the Agreement to Purchase as a result of that contamination. Subsequent to the laboratory report, the matter was reported to the Leaking Underground Storage Tank Division of the Department of Environmental Management. The Department did further borings and tests and have advised plaintiffs that there is a serious contamination of the soil which will require a substantial clean up, including removal of soil and back pumping because of serious contamination of the ground water at the site and nearby.

On October 18, 1988, plaintiffs filed a complaint against Marathon alleging that the contamination of the soil and the resultant damages to plaintiffs was caused by the negligence of defendant in that defendant, its agents and employees deliberately overfilled the storage tanks in a manner which allowed gasoline and petroleum products to overflow into the surrounding soil. Plaintiffs also allege that Marathon failed to properly remove the gasoline and petroleum storage tanks in that when the tanks were removed, the sides of the tanks failed to retain the product contained therein and allowed spillage into the surrounding soil. In their October 18, 1988 complaint plaintiffs further alleged that the defendant failed to inspect the gasoline and petroleum storage tanks for leakage and failed to replace the tanks when they had lost their structural integrity, allowing the petroleum products to seep into the surrounding soil. However, at oral argument plaintiff's counsel stated that plaintiffs were no longer pursuing any claims based on the alleged leakage from the underground storage tanks during the period of time that they were in operation, and are only pursuing their claims that Marathon negligently overfilled the storage tanks and that Marathon failed to properly remove the storage tanks.

On December 28, 1988, Marathon filed a third-party complaint against Kinzie. In this third-party complaint, Marathon asserts that Kinzie agreed to defend, indemnify, protect and hold harmless Marathon Petroleum from and against any and all losses, demands, claims, liabilities, causes of action or costs, including reasonable attorney fees, arising out of or resulting from, *inter alia*, Kinzie's use, misuse, possession or occupancy of the real estate. Consequently, Marathon has requested judgment against Kinzie for those amounts that may be awarded to plaintiffs or which Marathon may incur with respect to the real estate, the costs of this action, and reasonable attorney fees.

On March 15, 1989 plaintiffs filed an additional paragraph of complaint alleging

that Marathon was the owner or operator of a facility as defined in Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, and is liable for all costs of removal or remedial action incurred by the United States Government, or the State of Indiana, or any other person, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Kinzie, third party defendant, has filed a counterclaim against Marathon, third-party plaintiff, with nearly identical allegations.

Marathon has filed a motion for summary judgment asserting that all claims by plaintiffs [1] and Kinzie are barred by valid releases and indemnification clauses contained in several contracts and leases executed by Rodenbeck, Runkle, and Kinzie [2]. Marathon also asserts that all of plaintiffs' and Kinzie's claims against Marathon regarding spillage allegedly caused by removal of the tanks should be dismissed as the tank removal was performed by an independent contractor and also because Marathon was not an owner/operator of a facility, as required for liability under CERCLA, at the time of the tank removal.

1. Marathon's motion is directed to the claims of only two of the plaintiffs, Robert C. Rodenbeck and Don E. Runkle. Marathon has reserved for a later motion its argument that the claims of the other two plaintiffs in this action, Darlene Rodenbeck and P. Jeanne Runkle, are barred.

2. The business relationship between the Runkles, Rodenbecks, Kinzie Super Service, Inc., and Marathon was based on several related transactions. On February 1, 1973, Ethel Kinzie, owner of Kinzie Super Service, Inc., and Marathon entered into an agreement for lease of real estate whereby Ethel Kinzie leased her land to Marathon and Marathon leased the land back to Ethel Kinzie. On this date Ethel Kinzie also entered into a dealer lease. Both of these leases had a term of five years. On February 1, 1973 Kinzie Super Service, Inc. entered into a reseller's agreement with Marathon. This agreement had a term of five years.

On February 1, 1978 Ethel Kinzie entered into a new agreement for lease of real estate and she also entered into a new dealer lease. Later, in January of 1979, Ethel Kinzie assigned her dealer lease to Rodenbeck and Runkle.

On February 1, 1979 Marathon renewed Ethel Kinzie's lease of real estate. Also on February 1, 1979 Kinzie Super Service, Inc. cancelled its February 1, 1973 reseller's agreement with Marathon.

Marathon further asserts that all of plaintiffs' and Kinzie's claims against Marathon regarding the operation, inspection, maintenance or replacement of the tanks should be dismissed as plaintiffs have agreed not to pursue these claims and, in any event, plaintiffs and Kinzie, and not Marathon, were contractually obligated to inspect, maintain and replace the tanks.

### Release of Claims

Plaintiffs Robert Rodenbeck and Don Runkle, while operating Kinzie's Super Service, entered into several Lease Agreements, Reseller's Agreements, Seller's Agreements, and Service Station Leases. The latest of these agreements included an Agreement for Lease of Real Estate and a Service Station Lease whereby Marathon leased to Kinzie Service Station, Robert Rodenbeck, and Don Runkle the premises at 901 Spring Street, Fort Wayne, Indiana for use as a gasoline service station for a term of one year commencing April 1, 1987, and ending March 31, 1988 [3]. This Service Station Lease was signed by Don E. Runkle as lessee on March 25, 1987 and stated in part:

On February 1, 1980, February 1, 1981, and February 1, 1982 Marathon renewed Ethel Kinzie's lease of real estate.

On January 31, 1983 Marathon elected to not renew Ethel Kinzie's lease. Also on January 31, 1983 Marathon cancelled Rodenbeck and Runkle's dealer lease (which they had received by assignment from Ethel Kinzie). On February 1, 1983, Rodenbeck and Runkle entered into a seller agreement with Marathon. This agreement was cancelled on March 31, 1983, the same date that Ethel Kinzie sold the property to Rodenbeck and Runkle. On April 1, 1983, Runkle and Rodenbeck entered into an agreement for lease of real estate with Marathon, and Kinzie Super Service, Inc. entered into a service station lease with Marathon. On March 31, 1984, Kinzie Super Service, Inc. cancelled its April 1, 1983 service station lease.

On April 1, 1984, April 1, 1985, April 1, 1986, and April 1, 1987, Kinzie Super Service, Inc. entered into service station leases with Marathon.

On December 31, 1987 Rodenbeck and Runkle cancelled their April 1, 1983 agreement for lease of real estate and Kinzie Super Service, Inc. cancelled its April 1, 1987 service station lease.

3. See footnote 2, *supra.*

**6. PRODUCTS, PRICES AND INVEN-TORY MONITORING.** Marathon agrees to sell and deliver and Lessee agrees to purchase and accept delivery of Marathon's branded petroleum products....

**13. MISCELLANEOUS PROVISIONS.**

**C. ENTIRETY.** This Lease contains the entire agreement between the parties, and there are no oral promises or other representations or understandings inducing its execution or qualifying its terms. Any prior Lease or similar type of agreement between the parties, oral or written, is hereby superseded and terminated.

On December 18, 1987, Robert Rodenbeck signed two separate Mutual Cancellation of Agreements and Release of Claims [4] whereby it was agreed that the agreements known as Service Station Lease (which had the effective date of April 1, 1987) and Agreement for Lease of Real Estate (which had the effective date of April 1, 1983) were cancelled and held for naught [5]. These Release of Claims stated in part:

Each party hereto expressly *discharges and releases the other from all claims and obligations of any character or nature whatsoever arising out of or in connection with said agreements* and acknowledges full and complete performance on the part of the other party, except the undersigned's obligation to indemnify and save MARATHON harmless from claims of a third person arising out of the business conducted by the under-

signed under any agreement covered hereby and except all accounts receivable for merchandise sold and delivered by MARATHON under any agreement covered hereby, all rents payable to MARATHON by the undersigned and any indebtedness owing MARATHON by the undersigned (emphasis provided).

This mutual cancellation is executed by the parties on the respective dates indicated AND SAID CANCELLATION SHALL BE EFFECTIVE THE 31st DAY OF December, 1987.

Marathon takes the position that these Releases executed between the parties during the course of their business relationship bar plaintiffs' and Kinzie's claims. Specifically, Marathon asserts that plaintiff's claims of spillage caused by the filling of the tanks clearly "arise out of" the use of the real estate as a service station, as provided for in the Reseller's Agreement, the Seller Agreement, and the Agreement for Lease of Real Estate, and that pursuant to the express terms of the Releases, Rodenbeck, Runkle, and Kinzie discharged Marathon from all claims arising out of or in connection with the Reseller's Agreement, the Seller Agreement, and the Agreement for Lease of Real Estate. Likewise, Marathon asserts, the tank removal arose out of or in connection with the operation of Kinzie Super Service under the Seller Agreement and the Agreement for Lease of Real Estate, and thus, is covered under the express terms of the Releases [6].

---

**4.** Apparently it was the practice of Robert Rodenbeck to sign documents for Don Runkle and vice versa. The plaintiffs have not disputed the fact that Robert Rodenbeck had authority to act for Don Runkle.

**5.** The parties had previously executed three other Mutual Cancellation and Releases, containing provisions identical to those set forth above, to cancel certain documents in the course of their business relationship:

(1) February 1, 1979 Mutual Cancellation and Release between Marathon and Kinzie's Super Service cancelling the February 1, 1983 Reseller's Agreement, signed by Runkle.

(2) April 25, 1983 Mutual Cancellation and Release between Marathon, Rodenbeck, and Runkle cancelling the February 1, 1983 Seller Agreement, signed by Rodenbeck.

(3) September 21, 1983 Mutual Cancellation and Release between Marathon and Kinzie's Super Service cancelling the April 1, 1983 Service Station Lease, signed by Rodenbeck and Runkle.

**6.** Marathon further asserts that the tank removal was within the contemplation of the parties at the time the Releases were executed. The Mutual Cancellation and Releases were executed on or about December 18, 1987. Kinzie Super Station ceased operation on December 24, 1987. The tanks were removed on or about January 19–20, 1988. In their Answer to Defendant's Interrogatory 17(a), plaintiffs indicate that "[i]t was our understanding at the time the station was closed that Marathon would remove the tanks."

In the alternative, Marathon argues that it is entitled to summary judgment against all plain-

**1454**

A release is a surrender of a claimant's right to prosecute a cause of action. *Gearhart v. Baker,* 393 N.E.2d 258, 260 (Ind.App.1979). Release agreements, like contracts generally, are interpreted as a matter of law, absent some ambiguity. *Babson Brothers v. Tipstar Corp.,* 446 N.E.2d 11, 16 (Ind.App.1983). Interpretation of a release, like any other contract, is determined by the language of the particular instrument, considered in light of all the facts and circumstances. *Id.*

Plaintiffs argue that the Releases do not bar their claims against Marathon and point out that the real estate on which Kinzie's Super Station was located was owned by "Robert C. Rodenbeck and Darlene I. Rodenbeck, Husband and Wife; and Don E. Runkle and P. Jeanne Runkle, Husband and Wife, each marital entity as tenants in common with an undivided one-half (½) interest in said real estate". In a tenancy by the entirety, such as the Rodenbecks and the Runkles have in this case, the real estate is owned by the marital relationship and neither spouse has any individual portion which can be alienated, separated, or reached by the creditors of either spouse. Plaintiffs argue that it is these tenancies by the entirety that have made claims against Marathon, and there is no evidence that the tenancies entered into any release agreement with Marathon. Thus, plaintiffs conclude that the Mutual Cancellation of Agreements and Release of Claims signed by Runkle and Rodenbeck are completely ineffective. Marathon concedes that the property is owned by the plaintiff husbands and their wives as tenants by the entirety. However, Marathon insists that its motion for summary judgment is based entirely upon contractual releases executed by Kinzie and/or Runkle and Rodenbeck and that the court should disregard the ownership status of the property.

A review of Indiana property law reveals that in Indiana property held in tenancy by the entireties is held by a single legal entity created by the fiction of unity of husband and wife. *Bayes v. Isenberg,* 429 N.E.2d 654 (Ind.App.1981). Thus, as plaintiffs correctly point out in their brief, neither spouse alone can do any act to destroy the tenancy, one spouse cannot oust the other from possession, and neither can devise any interest during the tenancy absent equitable election. *Matter of Jeffers,* 3 B.R. 49 (Bankr.Ind.1980). Additionally, merely owning property as tenants by the entirety does not ordinarily bind one spouse when the other has contracted with a third party, unless the contracting spouse is authorized to act on behalf of the other spouse, or the noncontracting spouse ratifies the act. *McIntosh v. Turner,* 486 N.E.2d 565 (Ind.App.1985); *Bradford v. Bentonville Farm Supply,* 510 N.E.2d 745 (Ind.App.1987). Nonetheless, there is no case law in Indiana to support plaintiffs' contentions that a husband may not bind himself to a contract to release all claims he may have against a third party merely because he happens to own property as a tenant by the entireties. Consequently, the court finds that Mr. Rodenbeck and Mr. Runkle have effectively bound themselves by the Releases which they executed with Marathon.[7]

---

tiffs and Kinzie for all claims based on tank removal because the tank removal was performed by an independent contractor, and not by an employee of Marathon. Although the court does not need to reach this issue because it is necessary to grant summary judgment on other grounds, if the court did reach this issue it would appear as though plaintiffs, by referring to various portions of the Contractor's Agreement, and the fact of Marathon's supervision on the job site, may have raised a material issue of fact as to whether Marathon retained sufficient control over the person removing the tanks to negate his alleged independent contractor status.

7. Although the issue of whether Mrs. Rodenbeck and Mrs. Runkle are likewise bound by the Releases is not presently before the court, the court notes that the plaintiffs' prior conduct, whereby the husbands, *inter alia,* leased the entirety property to Marathon and later entered into a contract to sell the entirety property, strongly suggests that the husbands had authority to bind their wives to contracts involving entirety property. *See, e.g., Bradford v. Bentonville Farm Supply,* 510 N.E.2d 745 (Ind.App. 1987); *Upchurch v. Henderson,* 505 N.E.2d 455 (Ind.App.1987); *Uland v. Nat'l City Bank of Evansville,* 447 N.E.2d 1124 (Ind.App.1983); *Bayes v. Isenberg,* 429 N.E.2d 654 (Ind.App.1981).

Plaintiffs' next contention is that the various contracts, agreements, and releases entered into between plaintiffs and/or Kinzie were contracts of adhesion and are therefore nonbinding on the plaintiffs. "Contracts of adhesion arise when a standardized form of agreement, usually drafted by the party having superior bargaining power is presented to a party, whose choice is either to accept or reject the contract without the opportunity to negotiate its terms." *Finkle and Ross v. A.G. Becker Paribas, Inc.*, 622 F.Supp. 1505, 1511 (D.C.N.Y.1985). However, mere inequality in bargaining power does not render a contract unenforceable, *Stanley A. Klopp, Inc. v. John Deere Co.*, 510 F.Supp. 807, 811 (E.D.Pa.1981), *aff'd*, 676 F.2d 688 (3d Cir.1982), nor are all standardized contracts unenforceable, *see Waggoner v. Dallaire*, 649 F.2d 1362, 1367 (9th Cir.1981); *Bank of Indiana National Association v. Holyfield*, 476 F.Supp. 104, 110 (S.D.Miss.1979). Contract law would lose much of its meaning if unfavorable contract provisions could be challenged merely on the basis of the relative size of the contracting parties. *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir.1984).

Under Indiana law, a contract may be declared unenforceable due to unconscionability when there is gross disparity in bargaining power which leads the party with lesser power to sign the contract unwillingly or while unaware of its terms; additionally, the contract must be one that no sensible person, not under delusion, duress or in distress would make, and such as no honest and fair person would accept. *Stech v. Panel Mart, Inc.*, 434 N.E.2d 97 (Ind.App.1982). Although plaintiffs assert that they stood in an inferior bargaining position, they do not claim that they were unaware of the terms of the release or that they signed the release unwillingly. In fact, plaintiffs initiated the cancellation of their agreements with Marathon and wished to enter into the Cancellation of Agreements and Mutual Release of Claims with Marathon because plaintiffs wanted to sell their property. Furthermore, the releases which plaintiffs signed were *mutual* releases which clearly shielded plaintiffs in the event Marathon sought to hold plaintiffs liable for claims arising out of the agreements. Surely, if Marathon had sued plaintiffs or Kinzie alleging, for example, that plaintiffs or Kinzie had negligently spilled gasoline while operating the service station, plaintiffs and Kinzie would seek to have Marathon's claims dismissed as barred by the mutual releases. Consequently, it is clear that plaintiffs have failed to present any evidence which would show that a genuine issue of material fact exists with respect to their claim that the releases were adhesion contracts or otherwise unconscionable. Thus, plaintiffs' unsupported claim of contract of adhesion is insufficient to defeat Marathon's motion for summary judgment.

Plaintiffs next take the position that, under statutory and common law, Marathon is unable to shift its liability through the use of releases. Plaintiffs contend that CERCLA, 42 U.S.C. § 9601, *et seq.*, and the Indiana Underground Storage Tank Act (IUSTA)[8], I.C. 13–7–20–1, et seq., provide that liability for contamination cannot be transferred to another person.

CERCLA was enacted in 1980 to remedy the severe environmental problems caused by extensive negligent hazardous waste disposal practices. *United States v. Price*, 577 F.Supp. 1103, 1109 (D.N.J.1983). Section 107(a) of CERCLA creates a private cause of action to recover from responsible parties the costs of responding to hazardous waste conditions. *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887 (9th Cir.1986); *Wehner v. Syntex Corp.*, 622 F.Supp. 302 (E.D.Mo.1983). Section 107 of CERCLA provides in pertinent part:

(a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

---

8. The court notes that plaintiffs have made no claims in their complaint against Marathon under the Indiana Underground Storage Tank Act.

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous wastes were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan. . . .

42 U.S.C. § 9607 (1982).

▆▆▆▆ Liability under CERCLA is strict— no showing of negligence is required. *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir.1985). Nonetheless, CERCLA's liability provisions are subject to three express defenses set forth in the statute: an act of God, an act of war, and the "innocent landowner" defense. 42 U.S.C. § 9607(b) (1982). Marathon does not claim that any of these three defenses apply to the present case. Rather, Marathon contends that the Mutual Cancellation of Agreements and Release of Claims entered into between the parties act as a complete bar to plaintiffs' CERCLA claims as well as plaintiffs' negligence claims.

By its own terms, CERCLA expressly preserves the right of private parties to contractually transfer to or release another

from the financial responsibility arising out of CERCLA liability. Section 107(e)(1) provides:

No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. *Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section* (emphasis provided).

42 U.S.C. § 9607(e)(1) (1982). Under this provision, parties remain accountable for any costs incurred in a government-instituted cleanup, regardless of conveyance or transfer; however, between private parties, they retain the freedom to contract out of CERCLA liability. *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1459 (9th Cir.1986). CERCLA, therefore, does not abrogate the parties' contractual rights. *Chemical Waste Management v. Armstrong World Indus., Inc.*, 669 F.Supp. 1285, 1293 (E.D.Pa.1987). Thus, the issue before the court is whether the Releases entered into by the parties in the present case effected a transfer of Marathon's CERCLA liability. As noted above, absent ambiguity, the construction of a release is a matter of law to be determined by the court. *Babson Brothers Co. v. Tipstar Corp.*, 446 N.E.2d 11, 16 (Ind.App. 1983).

Marathon argues that the language of the Release evidences the parties' intent to release Marathon from all claims whatsoever. While a contract can, under appropriate circumstances, act to preclude recovery of response costs [9], there must be a provision in the contract which allocates risks of this nature to one of the parties. *Chemical Waste Management v. Armstrong World Indus.*, 669 F.Supp. at 1294; *FMC Corp. v. Northern Pump Co.*, 668 F.Supp. 1285 (D.Minn.1987). The court finds that

---

**9.** "Response" costs are cleanup costs. *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861

F.2d 155, 156 (7th Cir.1988).

the language of the Release states unambiguously that the plaintiffs have released Marathon from future arising causes of action. The Release expressly states that Marathon shall be released "from all claims and obligations of any character or nature whatsoever arising out of or in connection with said agreements...." This clause clearly releases Marathon from future arising causes of action of any sort, including CERCLA liability[10].

Finally, plaintiffs argue that Marathon's attempt to relieve itself of potential liability for contamination of plaintiffs' property is violative of public policy and therefore the Releases are unenforceable. Plaintiffs, however, fail to explain why the specific Releases at issue in this case are violative of public policy, but merely state that the public has become increasingly concerned in recent years about the quality of our environment. They have not even alleged, let alone presented evidence, that Marathon coerced plaintiffs into signing the Releases or procured the Releases in any way that would make the Releases unconscionable or otherwise violative of public policy. As was discussed earlier with reference to plaintiffs' claim of contract of adhesion, plaintiffs have failed to present any evidence which would show that a genuine issue of material fact exists with respect to their claim that the Releases were unconscionable. Therefore, the court finds plaintiffs' public policy argument to be meritless.

■ Kinzie, in its response to Marathon's motion for summary judgment, argues that the Releases, by their own terms, do not apply to Kinzie's claims against Marathon. Kinzie asserts that the Releases "cancel only particular prior agreements that are clearly specified, and the release language clearly pertains only to claims arising out of the cancelled agreements." Kinzie maintains that the Releases do not release Kinzie's claims that Marathon acted negligently in the course of delivering petroleum products but that the parties were merely putting the specific contracts behind them and agreeing that the parties would not claim that the terms of the specific contracts had been violated. Thus, Kinzie is asserting that the Releases are effective to bar only contractual claims, while Marathon argues that the Releases bar all of Kinzie's (and plaintiffs') claims regardless of the nature of the claims. The plain language of the Releases states that each party "releases the other from all claims and obligations of any character or nature whatsoever arising out of or in connection with said agreements and acknowledges full and complete performance on the part of the other party...." It is abundantly clear to the court that the Releases bar *all* claims whether sounding in tort or contract or whether based on a statute such as CERCLA. Therefore, Kinzie's argument that the Releases bar only Kinzie's contractual claims is also meritless.

Consequently, the court finds that as a result of the several Mutual Cancellation of Agreements and Release of Claims executed by the parties herein, the claims of plaintiffs, Robert Rodenbeck and Don Runkle, and the counter-claims of third-party defendant, Kinzie Super Service, Inc. are barred as a matter of law.

### Conclusion

For the foregoing reasons defendant Marathon's motion for summary judgment is hereby GRANTED.

---

**10.** Like Section 107(e)(1) of CERCLA, Section 23(a) of the IUSTA (I.C. § 13–7–20–23(a)) provides that although no indemnification agreement, hold harmless agreement or similar agreement is effective to transfer liability imposed by the government under the statute, "this subsection does not bar any agreement to insure, hold harmless or indemnify a party to an agreement for any liability under this chapter." Consequently, the court finds plaintiffs' argument that the IUSTA prohibits shifting of liability between private parties to be groundless.