**WRIGHT MOTORS, INC.,**
Appellant–Plaintiff,

v.

**MARATHON OIL COMPANY,**
Appellee–Defendant.

No. 82A01–9309–CV–316.

Court of Appeals of Indiana,
First District.

March 28, 1994.

Keith E. Rounder, Statham, Johnson & McCray, Evansville, for appellant.

John B. Drummy, Eric D. Johnson, Kightlinger & Gray, Indianapolis, for appellee.

NAJAM, Judge.

## STATEMENT OF THE CASE

Wright Motors, Inc. appeals from the entry of summary judgment in favor of Marathon Oil Company on Wright Motors' complaint for contribution against Marathon under the Indiana Underground Storage Tanks law. Marathon operated a gasoline station for several years on property it leased from Wright Motors. When it was discovered later that the underground storage tanks Marathon installed had leaked and had contaminated the property, Wright Motors sued Marathon for the cost of remediation incurred in the cleanup. Marathon moved for summary judgment and claimed that when Wright Motors consented to Marathon's assignment of its lease to a third party, Wright Motors also released Marathon from all liability under the lease, including liability for environmental contamination. The trial court agreed and entered summary judgment for Marathon.

We reverse and remand.

## ISSUE

We restate the sole issue presented as whether the release provision contained in Marathon's assignment of the lease released Marathon from all environmental liability.

## FACTS

In 1969, Wright Motors and Marathon executed a 10–year ground lease (the "lease") whereby Wright Motors leased several lots located in Evansville to Marathon for the construction and operation of a gasoline service station. In 1976, Wright Motors consented to Marathon's assignment of the lease to Green Construction of Indiana, Inc. In the Assignment Agreement ("agreement"), which all three parties signed, Wright Motors also agreed to release Marathon from any liability under the terms of the lease from and after December 19, 1979. One week after executing the agreement, Marathon sold its underground storage tanks installed on the property to Green Construction.

Sometime after Marathon's assignment to Green Construction, it was discovered that the underground storage tanks had leaked petroleum hydrocarbons into the surrounding soil. Wright Motors incurred in excess of $80,000.00 in remediation costs to clean up the contamination. Wright then sought contribution for those costs from Marathon and Green Construction pursuant to Indiana Code § 13–7–20–21 and common law theories

of contribution and waste.[1] We will state additional facts where necessary.

## DISCUSSION AND DECISION

### Standard of Review

■ In reviewing the entry of a summary judgment, we consider the same issues and conduct the same inquiry as the trial court. *O'Donnell v. American Employers Insurance Co.* (1993), Ind.App., 622 N.E.2d 570, 572, trans. denied. Summary judgment is only appropriate where the moving party demonstrates by properly designated evidentiary matter that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. *See* Ind. Trial Rule 56(E). All evidence must be construed most favorably to the nonmoving party. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. The meaning of a contract is a question of law for the court to decide for which summary judgment is particularly appropriate. *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols* (1991), Ind.App., 583 N.E.2d 142, 146.

### Release

This appeal turns upon the meaning and effect of Paragraph 4 of the agreement (hereinafter the "release"):

"4. Landlord expressly agrees that Assignor shall have *no further liability of any nature whatsoever under the terms of the Lease* from and after December 19, 1979, the expiration of the primary term thereunder." (emphasis added).

Wright Motors contends that the release is limited to obligations expressly stated in the lease terms because the release language in Paragraph 4 is qualified by the phrase "under the terms of the Lease." According to Wright Motors, since the lease does not contain a provision or any terms pertaining to environmental liability, the agreement does not release Marathon from such liability. Marathon disagrees and relies upon that part of Paragraph 4 which provides that it shall have no further liability "of any nature whatsoever." Marathon characterizes the release

as a "broad release" which relieves it of not only contractual liability but also tort and statutory environmental liability. Brief of Appellee at 8.

■ A release is a surrender of a claimant's right to prosecute a cause of action. *Lechner v. Reutepohler* (1989), Ind.App., 545 N.E.2d 1144, 1147. We construe a release to carry out the intent of the parties to the release. *Keskin v. Munster Medical Research Foundation* (1991), Ind.App., 580 N.E.2d 354, 358. That intent is disclosed by the language the parties used to express their rights and duties considered in light of all the facts and circumstances. *Citizens National Bank of Tipton v. Indianapolis Auto Auction* (1992), Ind.App., 592 N.E.2d 1256, 1258; *see First Federal Savings Bank of Indiana v. Key Markets, Inc.* (1990), Ind., 559 N.E.2d 600, 603.

■ A release is construed in the same manner as any other contract. *Huffman v. Monroe County Community School Corp.* (1992), Ind., 588 N.E.2d 1264, 1267. In construing a contract, we may not consider individual clauses or phrases in isolation and without reference to the whole instrument. *See Pennington v. American Family Insurance Group* (1993), Ind.App., 626 N.E.2d 461, 464. Rather, all of a contract's provisions must be harmonized so as not to place undue emphasis upon a particular clause or to take language out of context. *See id.* The construction of a release is a question of law for the court's determination. *Babson Brothers Co. v. Tipstar* (1983), Ind.App., 446 N.E.2d 11, 16.

■ We conclude that the phrase "under the terms of the Lease" in Paragraph 4 is dispositive in interpreting the scope of the release. The release does state that Marathon is released from "any liability whatsoever." However, the language "under the terms of the Lease" follows that phrase and expressly qualifies the extent of the liability released by limiting the release to liability under the lease *terms*. This language is not mere surplusage as Marathon would have us

1. Wright Motors also named as a defendant Busler Enterprises, Inc., which subsequently leased the underground storage tanks from Green Con-

struction. Neither Busler Enterprises nor Green Construction is a party to this appeal.

believe. Indeed, the agreement contains no fewer than three other references to either the lease "terms," its "terms, covenants and conditions" or its "terms and conditions." The agreement also incorporates the lease "terms and provisions" by reference.

We cannot accept Marathon's broad interpretation of the release nor its contention that the decision in *Rodenbeck v. Marathon Petroleum Co.* (1990), N.D.Ind., 742 F.Supp. 1448, controls the outcome of this case. In *Rodenbeck*, the plaintiffs and Marathon Petroleum Company were parties to several lease agreements. The plaintiffs, who owned real estate upon which they operated a gasoline service station, contracted for Marathon to sell and deliver to them Marathon's branded gasoline products. *Id.* Following cancellation of the agreements, boring samples of the property revealed contamination of the soil which would require a substantial clean-up. *Id.* at 1451. The plaintiffs filed suit against Marathon and alleged that the soil contamination was caused by Marathon's negligence in overfilling underground storage tanks, failing to inspect the tanks for leakage and failing to properly remove the tanks from the property. *Id.*

Marathon moved for summary judgment and claimed it had no liability to the plaintiffs for cleanup costs based upon the following language in the parties' Mutual Cancellation of Agreements and Release of Claims agreements:

"Each party hereto expressly discharges and releases the other from all claims and obligations of any character or nature whatsoever *arising out of or in connection with said agreements....*"

*Id.* at 1453 (emphasis added). In construing the phrase "arising out of or in connection with said agreements," the court rejected the plaintiffs' assertion that the releases constituted the parties' agreement to "merely

put[ ] the specific contracts behind them" and to "not claim that the terms of the specific contracts had been violated." *Id.* at 1457. Thus, in *Rodenbeck* the court held that based on such language in the releases, it was "abundantly clear to the court that the Releases bar *all* claims whether sounding in tort or contract or whether based on a statute such as CERCLA." *Id.* (emphasis in original).

The underlying facts in *Rodenbeck* are deceptively similar to those in the instant case. However, it is not a similarity in the underlying facts but the language of the release which controls. In *Rodenbeck*, the release was not limited to contractual liability, as expressed in the terms of the parties' agreements, but extended to any liability "arising out of or in connection with" those agreements.

Here, the language in Paragraph 4 and the repeated reference in the agreement to the text of the lease itself demonstrate that the release was merely a release of contractual obligations under the lease. In other words, by executing the release, Wright Motors and Marathon only intended to put the obligations of their lease behind them. *See id.* at 1457. That interpretation is also required by additional language in Paragraph 4 which specifically refers to the December 19, 1979, expiration date of the lease as the operative moment when Marathon would have no further liability under the terms of the lease. Thus, the scope of the release is coextensive with the terms of the lease.

■ In order to adopt Marathon's interpretation of the release, we would have to disregard the limiting phrase, "the terms of," in Paragraph 4 of the agreement.[2] This we cannot do. Courts may not read words or phrases in a contract alone but must read them in the context of the entire contract. *See INB Banking Co. v. Opportunity Op-*

---

2. Marathon also relies upon the following language in the agreement for its assertion that the release is broad enough to relieve them of environmental liability:

"Whereas, Assignor has requested that Landlord release Assignor from any and all future liability of any nature whatsoever under said Lease, upon the expiration of the primary term thereof on December 19, 1979;"

However, this provision appears in the recitals to the agreement. Recitals are not contractual and "are never permitted to control the express provisions of the contract." *Ohio Valley Gas, Inc. v. Blackburn* (1983), Ind.App., 445 N.E.2d 1378, 1383. Thus, to the extent that this recital and Paragraph 4 are in conflict, Paragraph 4 controls.

*tions, Inc.* (1992), Ind.App., 598 N.E.2d 580, 582, *trans. denied.* Further, we have no authority to make a new or different contract for the parties when construing a contract. *Workman v. Douglas* (1981), Ind.App., 419 N.E.2d 1340, 1346. Marathon asks us to extend the scope of the release to encompass a release of any liability arising from Marathon's use and possession of the real estate, but the release does not so provide. When a party or both parties have failed to include an important term in their contract, we should not succumb to the temptation "to do what they should have done in the first place." *Id.*

Accordingly, the terms of the lease control, and whether Marathon is released from liability for environmental contamination of Wright Motors' property is determined by reference to those terms. An examination of the lease discloses that there is no term, covenant or condition of the lease which either expressly or impliedly imposes a contractual duty upon Marathon with respect to environmental damage to the property.

 The Indiana Underground Storage Tanks law provides Wright Motors with a cause of action for contribution against the person who owned or operated a tank at the time contamination occurs. *See* IND.CODE § 13-7-20-21(b). Put another way, Indiana Code § 13-7-20-21 subjects Marathon to potential statutory environmental liability as a past or present owner or operator of a leaking underground storage tank. However, in this instance the release only effects a release of contractual obligations imposed upon Marathon by the express terms of the lease. As a limited release, the release neither relieves Marathon from common law liability[3] nor from liability based upon a statute such as the Indiana Underground Storage Tanks law. *Cf. Rodenbeck*, 742 F.Supp. at 1457.

### CONCLUSION

We hold as a matter of law that under Paragraph 4 of the agreement, Marathon is not released from all liability for environmental contamination. The release only releases Marathon from liability and duties imposed by the express contractual terms of the lease. Wright Motors' complaint against Marathon is an action to recover the costs of remediation brought pursuant to the statutory authority of the Indiana Underground Storage Tanks law, Indiana Code § 13-7-20-21, and the common law theories of contribution and waste. It is not an action for breach of contract. Accordingly, Wright Motors has not released Marathon from environmental liability because such liability is not expressly included as a term of the lease. Summary judgment for Marathon was error.

The judgment is reversed and remanded for proceedings consistent with this opinion.

ROBERTSON, and RUCKER, JJ., concur.

---

3. At common law, the owner or a person with an interest in real property may bring an action for waste for the destruction, misuse, alteration or neglect of the premises by one lawfully in possession of the premises. *See Finley v. Chain* (1978), 176 Ind.App. 66, 78, 374 N.E.2d 67, 77, *overruled on other grounds Morris v. Weigle* (1978), 270 Ind. 121, 383 N.E.2d 341; *Brugh v. Denman* (1906), 38 Ind.App. 486, 488, 78 N.E. 349, 350.